862 So.2d 35 (2003)
WAKSMAN ENTERPRISES, INC., a Florida corporation, Appellant,
v.
OREGON PROPERTIES, INC., a Florida corporation, and Hill, Ward & Henderson, P.A., a Florida corporation, Appellees.
No. 2D02-2461.
District Court of Appeal of Florida, Second District.
September 24, 2003.
*36 Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Gibbons, Cohn, Neuman, Bello, Segall & Allen, P.A., Tampa, for Appellant.
Roy J. Ford, Jr., Lynn C. Hearn, and Marie A. Borland of Hill, Ward & Henderson, P.A., Tampa, for Appellee Oregon Properties, Inc.
CANADY, Judge.
Waksman Enterprises, Inc. (seller) contracted to sell certain real property to Oregon Properties, Inc. (buyer or purchaser). In connection with the contract, Oregon paid Waksman certain funds as deposits. When the transaction failed to close, Waksman sought a declaratory judgment that it was entitled to retain the deposits. Waksman now appeals the trial court's judgment requiring that all the funds paid as deposits be refunded to Oregon. Because we conclude that under the terms of the contract Oregon was only entitled to be refunded a portion of the deposit monies, we affirm in part and reverse in part.

I. BACKGROUND
The parties entered into a contract in May 2000 for the sale and purchase of a commercial real estate parcel in Tampa. Oregon was simultaneously attempting to acquire the 25,500 square foot parcel from Waksman and three other parcels adjoining it, with the intention of erecting a 14,600 square foot Walgreen's store on the site. Each of the four parcels had a different owner.
A. Contract Provisions
The contract for sale and purchase between Waksman and Oregon provided for a purchase price of $450,000. The contract provided for three categories of deposits: (1) the "Deposit" of $10,000 payable upon execution of the contract; (2) the "Additional Deposit" of $20,000 payable at the conclusion of a ninety-day inspection period after the execution of the contract; and (3) deposits of $10,000 each payable for each of three optional thirty-day extensions of the closing date. The contract also contained provisions relating to governmental approvals, as well as specific conditions to the buyer's obligations.
In order to explain the merits of the arguments raised by the parties concerning the proper interpretation of the contractual provisions relating to the deposit monies, we set forth the pertinent provisions *37 in their entirety. Other than the provision calling for the initial $10,000 "Deposit," the pertinent provisions appear in a contemporaneous addendum (identified as exhibit A) to the form contract executed by the parties.
Paragraph 1 ("Inspection Period") of the addendum provides:
(b) In the event the Purchaser determines, in its sole discretion, that the Property is unsuitable for its needs and gives written notice of same during the [90-day] Inspection Period, then this Agreement shall become null and void. The Deposit and accrued interest shall be returned to Purchaser within five business days. In the event Purchaser elects not to terminate this Agreement within the Inspection Period, then this Agreement shall remain in full force and effect and the transaction shall continue to Closing (as defined below) and the Purchaser shall make an additional $20,000.00 deposit ("the Additional Deposit") and the Deposit and the Additional Deposit shall be non [ ]refundable to Purchaser.
Paragraph 2 ("Closing Date") of the addendum provides for a closing date "within Two Hundred Forty (240) days after the expiration of the [90-day] inspection period or within 10 days of receipt of all applicable building permits whichever occurs first." It places this express obligation on Oregon: "Buyer must apply for and use its best efforts to obtain all necessary building permits during this 240[-]day period." Paragraph 2 also contains a provision for the payment of deposit monies for the extension of the closing date:
Purchaser may elect to extend the closing date for three (3) periods not to exceed Thirty (30) days each, provided that Purchaser deposits Ten Thousand Dollars ($10,000.00) for each Thirty (30) days extension at or before the time each such extension goes into effect. Each deposit is non[ ]refundable to Purchaser and shall apply to the Purchase Price at closing.
Paragraph 5 ("Conditions to Purchaser's Obligations") of the addendum provides in pertinent part:
The obligation of Purchaser hereunder to consummate the Closing contemplated hereby is subject to the satisfaction, as of the Closing, of each of the following conditions (any of which may be waived in whole or part in writing by Purchaser at or prior to Closing):
....
(b) Compliance by Seller. Seller shall have performed, observed [,] and complied with all of the covenants, agreements[,] and conditions required by this Agreement to be performed, observed [,] and complied with by Seller prior to or as of the Closing.
....
(d) Building permit. Buyer shall have procured the necessary building permit for the construction of a 14,600 square foot Walgreens.
Paragraph 6 ("Broker") is followed by an unnumbered paragraph, which constitutes the concluding provision of the addendum:
In the event the conditions set forth above have not been satisfied, Purchaser shall have the right to terminate this Agreement by delivering to Seller a notice in writing of its desire to terminate this Agreement. In such event the Escrow Agent shall return to Purchaser the Deposit and Additional Deposit plus any accrued interest.
B. The Deposit Dispute
Oregon terminated the contract with Waksman in June 2001, when its option to purchase one of the adjoining parcels expired. *38 Thereafter, Oregon opposed Waksman's attempt to collect $50,000 in deposits Oregon had placed in escrow pursuant to the terms of the contract. The $50,000 consisted of the initial $10,000 Deposit, the $20,000 Additional Deposit, and two $10,000 deposits made for extensions of the closing date. Waksman filed the declaratory judgment action against Oregon in August 2001, seeking a declaration as to its entitlement to "the entire $50,000.00 non[ ]refundable deposit, plus interest." Waksman's complaint alleged that "[b]ecause Oregon terminated the contract after the expiration of the inspection period, Waksman [was] entitled to the entire ... deposit," which became nonrefundable pursuant to the express terms of the contract.
Oregon answered the complaint and asserted various affirmative defenses. Oregon denied Waksman's entitlement to any of the funds and asserted a right to the return of all the deposit monies. As its third affirmative defense, Oregon claimed that, because it "was unable to procure the necessary building permit, [it] was acting within its rights under the Contract when it exercised its right to terminate."
Oregon then filed a motion for summary judgment, asserting that there existed no genuine material factual issues and that it was entitled to a summary judgment as a matter of law, because the contract as written required a refund to it of the entire $50,000. Oregon filed the affidavit and supplemental affidavit of the vice president of Oregon, Jeffrey Surrency, in support of its motion. Surrency attested, among other things, that Oregon was entitled to a full refund of all deposits in escrow because the condition set forth in addendum paragraph 5(d) was left unsatisfied when "Oregon determined that it would not be able to obtain a building permit for the project it contemplated." In his supplemental affidavit, Surrency detailed all of the lengthy and expensive steps Oregon took in its effort to secure a building permit. Surrency stated the specific factual basis for Oregon's inability to obtain a building permit:
[O]f the four (4) parcels needed to be combined by Oregon to be able to construct a 14,600 feet [sic] Walgreen's, Oregon was not able to obtain an extension of the sales contract for one (1) of these four (4) parcels. Without all four (4) parcels, it would be impossible to obtain the building permit mentioned in [addendum] Paragraph 5.
Waksman filed the affidavit of its president, Albert Waksman, in opposition to Oregon's summary judgment motion. Mr. Waksman attested that paragraph one of the addendum expressly provided that Oregon's initial $10,000 "Deposit and the Additional [$20,000] Deposit shall be non[ ]refundable to the Purchaser" in the event the purchaser pursued the contract beyond the initial ninety-day inspection period, as was the case here. He further asserted that the two subsequent $10,000 deposits that Oregon paid, respectively, for two thirty-day extensions of the closing were designated "non[ ]refundable" by paragraph 2 of the addendum. Mr. Waksman stated that his company would not have entered into the contract and taken its property off the market for over a year had it not been agreed that the subject deposits would be nonrefundable. However, Mr. Waksman's affidavit acknowledged
[t]hat in order to complete the project contemplated by the contract between Waksman and Oregon, Oregon had to purchase additional property adjoining the property which it had contracted to purchase from Waksman. Oregon's contract with the adjoining property owner expired before it could complete the process of obtaining the necessary building permit, and Oregon was not *39 able to negotiate a contract extension with the adjoining property owner.
A hearing was held on Oregon's summary judgment motion on February 18, 2002. At that hearing, the parties and the trial court agreed that the provision in the contract appearing at the end of the addendum contradicted the two preceding provisions that expressly declared the subject deposits "non[ ]refundable," thus creating an ambiguity. The trial court directed Waksman to submit its own summary judgment motion and directed both parties to submit memoranda indicating whether the ambiguity was patent or latent. The parties and the trial court acknowledged that if the ambiguity was patent the trial court would have to resolve the ambiguity and thus discern the parties' intent by looking exclusively within the four corners of the contract. A trial would be unnecessary in that event, and a summary judgment would ultimately issue for one of the parties. Conversely, it was understood that a latent ambiguity would preclude the entry of a summary judgment because it would then be necessary for the trial court to consider extrinsic evidence presented by the parties as to whether Oregon's deposits were intended to be nonrefundable.
The parties thereafter submitted their respective memoranda, and Waksman filed its motion for summary judgment. Both Oregon and Waksman agreed that the ambiguity was patent and that its resolution would be based on a review limited by the four corners of the contract. Each party, of course, asserted a contract interpretation that was favorable to it. Both parties also addressed the issue of whether Oregon used its best efforts to obtain a building permit.
Oregon's memorandum included a litany of factual assertions to demonstrate that it did everything it could to obtain a building permit. The same or similar facts were attested to in Surrency's supplemental affidavit. Oregon's memorandum also asserted that Oregon terminated the contract only when it determined that it would be "impossible" to obtain the required building permit. It was conceded that an application for the building permit had never been submitted by Oregon. Waksman, on the other hand, asserted that it was entitled to a summary judgment on the basis that Oregon breached the contract by failing to apply for and use its best efforts to obtain a building permit. Waksman did not, however, adduce any facts to dispute or refute Oregon's factual assertions concerning the impossibility of obtaining the building permit.
In March 2002, the trial court entered a nonfinal order granting Oregon's motion for summary judgment. The trial court found that the facts of the instant case were similar to those involved in Arthur Rutenberg Corp. v. Pasin, 506 So.2d 33 (Fla. 4th DCA 1987), and ruled that, "in the absence of clear language in the contract allowing [Waksman] to retain the deposit," Oregon was entitled to a full refund. The order also cited cases enunciating the proposition that "the law abhors a forfeiture." After denying Waksman's subsequent motion for rehearingwhich for the first time asserted that at the very least Oregon's payments for two closing extensions should have been deemed nonrefundablethe trial court entered a final judgment for Oregon and directed the escrow agent, also a party to the suit, to disburse the disputed funds to Oregon.

II. ANALYSIS
A. The Meaning of the Deposit Provisions
We begin our analysis of the merits of the arguments advanced by the parties with the issue of whether the contract *40 was in fact ambiguous. Although we acknowledge that the contract could have been drafted in a more artful manner, we conclude that the disputed provisions are not ambiguous. Insofar as the provisions of the contract pertinent to the deposit dispute are concerned, there was neither a patent nor a latent ambiguity. Accordingly, our interpretation of the provisions of the contract will be based on the fundamental rule of construction: "Contract language must be given its plain meaning." Interfirst Fed. Sav. Bank v. Burke, 672 So.2d 90, 92 (Fla. 2d DCA 1996). We are also guided by the "rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof." City of Homestead v. Johnson, 760 So.2d 80, 84 (Fla.2000) (citing Sugar Cane Growers Coop. of Fla., Inc. v. Pinnock, 735 So.2d 530, 535 (Fla. 4th DCA 1999)).
It is not difficult to reconcile the nonrefundable language in addendum paragraph 1(b) and addendum paragraph 2 with the refund provision in the language at the end of the addendum. The refund language called for the return to Oregon of "the Deposit and Additional Deposit plus any accrued interest," if Oregon terminated the contract because "the conditions set forth above"that is, the conditions in addendum paragraph 5 "have not been satisfied." In short, once the inspection period was over the deposits all were nonrefundable if Oregon failed to close, except to the limited extent that "the Deposit and Additional Deposit" would be returned to Oregon if Oregon terminated the contract because the conditions set forth in paragraph 5 of the addendum were not satisfied. The language at the end of the addendum reflects a specific and limited exception to the general provision that deposits are nonrefundable if the buyer fails to close. The parties to the contract thus expressed their understanding that both the initial $10,000 Deposit and the Additional Deposit of $20,000, which was payable at the conclusion of the inspection period, would be refunded if the conditions of addendum paragraph 5including the building permit requirementwere not satisfied.
The reference in the refund provision to "the Deposit and Additional Deposit" cannot properly be understood as applying to the closing extension deposits provided for in addendum paragraph 2. In the addendum, "the Deposit" and "the Additional Deposit" are defined terms. The Deposit is the initial $10,000 deposit paid upon execution of the contract. The Additional Deposit is the $20,000 payment due at the conclusion of the inspection period if Oregon decided to proceed with the transaction. It is only those two elements of the deposit monies that are subject to refund if the purchaser terminates the contract because one of the conditions of paragraph 5 is not satisfied.
The closing extension deposits provided for in addendum paragraph 2 are a different matter. There is no provision of the contract that provides for their refund to the buyer when the buyer has terminated the contract due to the nonsatisfaction of a condition of addendum paragraph 5. The closing extension deposits are clearly something separate and distinct from "the Deposit" and "the Additional Deposit." The refund provision of the addendum does not make a general reference to "deposits."[1] It cannot reasonably be understood *41 to encompass the closing extension deposits. The plain language of the contract dictates our conclusion on this point. We also note, however, that there is nothing at all unusual about a seller agreeing to return earnest money deposits if certain conditions are unsatisfied while insisting that sums paid for extensions of the agreed date for closing will not be refundable due to the nonsatisfaction of those same conditions. It is entirely reasonable for a seller to exact from the buyer a paymentwhich the buyer cannot recover except as a credit at closingto compensate the seller for keeping the seller's property off the market for a period of time that extends beyond the time for closing initially contemplated and agreed to by the parties.
The trial court and Oregon both rely on the decision in Arthur Rutenberg to support the conclusion that the contract in the instant case provided for the refund of all the deposit monies paid by Oregon if Oregon terminated the contract due to the nonsatisfaction of the conditions of addendum paragraph 5. Their reliance is partially justified and partially unjustified.
In Arthur Rutenberg, the Fourth District addressed the interpretation of a real estate contract containing provisions which provided for the following: (1) an initial nonrefundable deposit; (2) an additional deposit payable twenty days after execution of the contract; and (3) a financing contingency specifying that "`all deposits shall be returned to the buyer'" if financing was not obtained by the buyer. 506 So.2d at 34. When the financing contingency was not satisfied, a dispute arose over the deposit monies. Notwithstanding the financing contingency provision for the return of "all deposits," the trial court ruled that the initial deposit should be forfeited based on its designation in the contract as nonrefundable. The trial court based its decision on the rule of construction that "specific directions in the contract take precedence over the general." Id. On appeal, the Fourth District rejected the reasoning of the trial court and held that it is "reasonable to conclude that the [initial deposit] would be returned to the buyer if the financing contingency failed for reasons beyond his control." Id. at 35. The trial court had the rule right, but the application wrong. It is more reasonable to view the refund provision in the financing contingency not as a general provision but as a specific direction that controls over the general designation of the initial deposit as nonrefundable.
The decision of the Fourth District in Arthur Rutenberg is quite cogent. And it does provide partial support for the decision of the trial court in the instant case. The trial court's determination with respect to the initial Deposit and the Additional Deposit is supported by the Arthur Rutenberg court's holding that a contract provision expressly providing for the refund of deposit monies upon the nonsatisfaction of a condition for closing takes precedence over a designation of deposit monies as nonrefundable. But the decision of the trial court in the instant case with respect to the closing extension deposits is not similarly supported. In Arthur Rutenberg, the contract called for the return of "all deposits" if the financing contingency was not satisfied. Id. at 34. In the instant case, as we have already discussed, such comprehensive language is absent.
The trial court's invocation of the principle that "the law abhors a forfeiture" is inapposite. That principle cannot properly be used to justify an interpretation of a contract that ignores the plain meaning *42 of the text of the contract. The parties to a real estate contract may enter an enforceable agreement that deposits paid by the buyer will be forfeited to the seller under specified circumstances. Indeed, such deposit forfeiture provisions are standard and customary in real estate contracts. See Decker v. Strom & Strom Realtors, Inc., 695 So.2d 803, 803 (Fla. 2d DCA 1997) (affirming trial court order requiring buyers to forfeit their deposit in a residential real estate transaction where buyers breached contract by "refus[ing] to close when they learned that the mortgage payments would be higher than they had anticipated"). It is true that there are circumstances where "a party entitled to a forfeiture may be estopped from asserting that right, if the result would be unconscionable." Torres v. K-Site 500 Assocs., 632 So.2d 110, 112 (Fla. 3d DCA 1994) (citations omitted). It is also true that a deposit forfeiture provision may constitute an unenforceable penalty in certain circumstances. See Lefemine v. Baron, 573 So.2d 326, 329 (Fla.1991) (holding that deposit forfeiture was an unenforceable penalty where contract granted seller option "either to choose liquidated damages [i.e., the deposit] or to sue for actual damages [thereby] indicat[ing] an intent to penalize the defaulting buyer and negat[ing] the intent to liquidate damages in the event of a breach"); Hyman v. Cohen, 73 So.2d 393, 401 (Fla.1954) (holding that forfeiture provision will be enforceable only where damages are not "readily ascertainable" and forfeiture amount is not "grossly disproportionate" to potential damages). Here, however, Oregon has relied upon its argument concerning the proper interpretation of the provisions of the contract. It has contended not that the deposit forfeiture provisions of the contract are unconscionable or otherwise unenforceable, but that they are not applicable in the factual circumstances presented by this case.
B. Waksman's Right to the Closing Extension Deposits
Based on our interpretation of the express provisions of the contract, we conclude that, even if Oregon established that it had properly terminated the contract due to the nonsatisfaction of the conditions of addendum paragraph 5, Oregon nonetheless had no contractual right to the return of the two $10,000 closing extension deposits paid to Waksman pursuant to addendum paragraph 2. There was simply no basis in the contract for the trial court's determination that Oregon was entitled to the return of the $20,000 sum paid for the two extensions. Waksman therefore has the contractual right to retain the $20,000, and the trial court erred in awarding that sum to Oregon.
Although this specific point was not raised by Waksman before the trial court until Waksman asserted it in its motion for rehearing, Oregon has conceded that the point was properly presented to the trial court by the motion for rehearing and thus preserved for appellate review. See Anderson v. Aamco Transmissions of Brevard, Inc., 265 So.2d 5 (Fla.1972) (holding that in summary judgment proceeding trial court must consider matters raised for the first time in motion for rehearing by party against whom summary judgment has been entered).
C. Oregon's Right to the Initial Deposit and the Additional Deposit
The right of the respective parties to the Deposit and the Additional Deposit turns on whether Oregon had the right to terminate the contract due to the nonsatisfaction of the conditions of addendum paragraph 5. The summary judgment in favor of Oregon can be upheld on this point only if there are no disputed issues of fact that are material to Oregon's claim *43 that it had the right to terminate the contract under addendum paragraph 5. See, e.g., Richardson v. Wal-Mark Contracting Group, 814 So.2d 534, 535 (Fla. 2d DCA 2002) (stating that "[t]he party moving for summary judgment has the burden of showing the nonexistence of genuine issue of material fact") (citation omitted); Lively v. CSX Transp., Inc., 557 So.2d 210, 211 (Fla. 2d DCA 1990) (stating that "[t]he test for summary judgment is whether there exists any genuine issue of material fact") (citation omitted). In particular, we must determine whether there is any disputed issue of material fact concerning Oregon's right to terminate the contract due to the nonsatisfaction of the building permit condition set forth in addendum paragraph 5(d). We conclude, on the basis of the record before the trial court, that the undisputed facts establish that the building permit condition was not satisfied and Oregon was therefore entitled to terminate the contract.
On appeal, Waksman points to the obligation imposed on Oregon under addendum paragraph 2 to "apply for and use its best efforts to obtain all necessary building permits." According to Waksman, the undisputed fact that Oregon did not make application for a building permit for the construction of the 14,600 square foot structure contemplated by the contract prevents Oregon from relying on the nonsatisfaction of the building permit condition as a basis for the return of the Deposit and the Additional Deposit. Waksman also urges that Oregon had an obligation under the contract to use its best efforts to consummate the other purchases which were necessary to assemble the parcels required for the construction of the contemplated structure and that Oregon did not meet that obligation.
It is, of course, true that Oregon did not apply for a building permit as required by addendum paragraph 2. But the undisputed facts in the record establish that the filing of such an application for a building permit would have been a futile act. Indeed, Mr. Waksman's own affidavit supported the conclusion that Oregon "could [not] complete the process of obtaining the necessary building permits." The futility of applying for a building permit arose from Oregon's inability to obtain a necessary extension of its option on one of the other parcels necessary for the construction of the contemplated structure. Once again, Mr. Waksman's affidavit admitted that "Oregon was not able to negotiate a contract extension with the adjoining property owner." Waksman adduced no facts to show either (a) that the failure of the related transaction was the consequence of some act or omission by Oregon that constituted the breach of an obligation owed by Oregon to Waksman or (b) that the filing of a building permit application would not have been an exercise in futility, given the failure of the related transaction.
Waksman's claim for the retention of the initial Deposit and the Additional Deposit thus hangs entirely on its argument that Oregon had the obligation under addendum paragraph 2 to undertake the undisputedly futile act of applying for a building permit. The failure to undertake this futile act, according to Waksman, negated Oregon's right under addendum paragraph 5 to terminate the contract for the nonsatisfaction of the building permit condition. But the law does not require that a party to a contract take action that would clearly be futile. See Blackmon v. Hill, 427 So.2d 228, 230 (Fla. 3d DCA 1983) (stating that "the exercise of reasonable diligence [does not] require the undertaking of an effort which clearly would be futile") (citing Gray v. Sawyer, 247 S.W.2d 496 (Ky.Ct.App.1952)); see also Arbor Adver. Corp. v. Grammatico, 530 *44 So.2d 364, 365 (Fla. 2d DCA 1988) (holding that, where permit was denied, party to lease made a good faith effort to obtain required permit notwithstanding his failure to appeal the initial denial because there was "a basis for [him] to believe that an appeal would have been futile"). Oregon's failure to undertake the undeniably futile act of applying for a building permit thus does not defeat Oregon's right to terminate the contract pursuant to addendum paragraph 5.
Oregon has a contractual right to retain the $30,000 sum paid for the initial Deposit and the Additional Deposit. The trial court was thus correct in entering summary judgment for Oregon on the issue of the initial Deposit and the Additional Deposit.

III. CONCLUSION
Based on the plain language of the contract and the undisputed facts adduced on the motions for summary judgment, Waksman has the right to retain $20,000 of the deposit monies (plus accrued interest thereon) and Oregon has the right to the refund of $30,000 of the deposit monies (plus accrued interest thereon). On remand, the trial court is directed to enter judgment accordingly.
Affirmed in part, reversed in part, and remanded for entry of judgment consistent with this opinion.
NORTHCUTT and STRINGER, JJ., concur.
NOTES
[1] We note that the contract does contain another provisionwhich is not relevant to the present caseproviding the buyer with the right to "elect to receive the return of Buyer's deposit(s)" in the event the seller "neglects or refuses to perform this Contract." We acknowledge that the interaction of that provision of the contract with addendum paragraph 5(b) and the refund provision at the end of the addendum presents a more challenging question than the question presented by this case.