943 So.2d 218 (2006)
Martin J. BRADLEY, III, and Maria P. Bradley, Appellants,
v.
Jose M. SANCHEZ, Appellee.
No. 3D05-2669.
District Court of Appeal of Florida, Third District.
November 1, 2006.
Rehearing Denied December 14, 2006.
*220 Manuel Arthur Mesa, Miami, for appellants.
Joseph S. Shook, Miami, for appellee.
Before GREEN, RAMIREZ, and SUAREZ, JJ.
RAMIREZ, J.
Martin J. Bradley, III and his wife, Maria P. Bradley, appeal the trial court's amended final judgment entered in favor of appellee Jose M. Sanchez, as well as the trial court's order granting final judgment for liquidated damages and the trial court's order denying the Bradleys' motion for leave to amend. We affirm all orders, finding that the trial court committed no error.
On December 4, 2002, the Bradleys and Mr. Sanchez executed a contract for the purchase and sale of a luxury home in Coral Gables, Florida. The Bradleys were the prospective buyers, and Mr. Sanchez was the prospective seller. Esslinger Wooten Maxwell, Inc. Realtors (EWM) was the real estate brokerage firm acting as agent for Mr. Sanchez.
The parties used a form contract provided by EWM. The purchase price was $10,500,000. The original closing date was set for March 1, 2003, but was extended at Mr. Sanchez's request, so that the executed contract required a closing on or before June 2, 2003. The contract was contingent upon the buyers obtaining 50% financing. The Bradleys paid an initial deposit of $10,000 on November 27, 2002, with a $500,000 deposit due by December 20, 2002. Paragraph 13 of the contract states, in part, that "[m]odifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound."
There is no dispute that Mr. Bradley understood every part of the contract, agreed to all the handwritten changes in the contract, initialed wherever there was a change, and understood when the additional deposit was due. Mr. Bradley admitted that he signed the provision of the contract where it is agreed that "[s]eller retains 100% of the deposit in case of default." The financing contingency clause of the contract provided the Bradleys with five days from the effective date of the contract (December 4, 2002) to apply for financing.
The Bradleys claim that after signing the contract, Mr. Bradley was told by Marilyn Cromer, the EWM agent that showed the Bradleys the subject property, that he could wait until nearer to the closing date to apply for a financing commitment. Mr. Bradley stated that Ms. Cromer told him that she was giving him consent to wait on applying for financing. This conversation allegedly took place on December 17, 2002. Ms. Cromer denied that she made the representation and denied that she had the authority to make the representation.
On December 12, 2002, the Bradleys were served with a federal search warrant. Up until this point, the Bradleys had not applied for financing. The Bradleys claim that the existence of the federal government's investigation, which they allege would have to be disclosed to any bank, eliminated any chance they would have of qualifying for a large home mortgage loan, so they did not apply for a loan. Mr. Bradley stated in his deposition that the federal government did not actually seize any of his bank accounts or financial assets as of December 12, 2002.
On December 20, 2002, (the day the $500,000 deposit was due), Mr. Bradley attempted to cancel the contract. The Bradleys did not make an additional deposit, believing the contract to be canceled. The Bradleys wanted their deposit back, *221 and Mr. Sanchez wanted to keep the $10,000 deposit, as well as the additional $500,000 that was required.
The Bradleys then filed suit against Mr. Sanchez and EWM, seeking declaratory relief. Mr. Sanchez filed a Motion to Dismiss and a counterclaim, alleging breach of contract and seeking the $10,000 deposit paid and the $500,000 deposit that was not paid. Mr. Sanchez eventually moved for summary judgment, which was granted by the trial court. The trial court denied the Bradleys' motion for rehearing. Mr. Sanchez moved for the entry of a final judgment. The Bradleys moved to file a Third Amended Complaint, claiming that on April 18, 2005, Mr. Sanchez sold the house at issue for $10,400,000. The trial court denied the motion to amend and eventually entered a final judgment in favor of Mr. Sanchez, awarding him the $10,000 deposit, the $500,000 deposit, and prejudgment interest.
We conclude that the trial court properly found there were no genuine issues of material fact regarding the Bradleys' breach of the real estate contract, nor with regard to any defense asserted. Furthermore, granting the Bradleys' motion for leave to amend would have been futile because the uncontradicted facts indicate the damages complained of in the proposed unjust enrichment action and conversion action were legally recognizable liquidated damages to which the parties agreed.
Mr. Bradley admitted that he failed to apply for financing within the five day period from the operative date of the contract. In fact, the five day period elapsed without the Bradleys applying for any kind of financing, before any alleged oral waiver of this term by Ms. Cromer. This alleged oral waiver did not occur until December 17, 2002. The federal search occurred on December 12, 2002, and the contract was operative on December 4, 2002. Thus, the Bradleys' estoppel defense is not supported by the facts in the record because, if Mr. Bradley admitted that Ms. Cromer made her alleged representation on December 17, 2002 (13 days after the operative date of the contract), then Mr. Bradley could not have relied upon her alleged representation to his detriment within the operative period.
In addition, Mr. Bradley admitted that he failed to submit the additional deposit of $500,000, as required by the contract. Paragraph 3(b)(2) of the contract provided in part:
"Buyer will apply for Financing within ___ days from Effective Date (5 days if left blank) and will timely provide any and all credit employment, financial and other information required by the lender."
Paragraph 2(b) provided that "$500,000.00 Additional deposit to be made by 12/20/02. . . ." The contract clearly requires that within five days of the operative date of the contract, December 4, 2002, the Bradleys "will apply for financing." There are no other terms in the contract that excuse this requirement.
"[C]learly written provisions of contracts entered into by ordinary men should be construed in the light of common understanding." Schechtman v. Grobbel, 226 So.2d 1, 3 (Fla. 2d DCA 1969). Where there is no facial ambiguity in the portion of the subject contract, "the provision must be afforded its plain meaning." Broward Cty. v. LaPointe, 685 So.2d 889, 892 (Fla. 4th DCA 1996). Moreover, "[w]here the determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment." Volusia Cty. v. Aberdeen at Ormond Beach, *222 L.P., 760 So.2d 126, 131 (Fla.2000). Where the terms of the contract are clear and unambiguous, summary judgment is appropriate. Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A., 771 So.2d 628, 631 (Fla. 4th DCA 2000).
Furthermore, the record establishes that the parties agreed not to allow a waiver of any contractual term without putting it in writing. Paragraph 13 of the contract clearly states that "[m]odifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound." Thus, this language prevents an oral waiver or modification of the term requiring five days to apply for financing and requiring that the $500,000 be paid no later than December 20, 2002. See Rybovich Boat Works, Inc. v. Atkins, 587 So.2d 519, 522 (Fla. 4th DCA 1991)(where contract contained an antiwaiver provision, the court found that the relevant provision could not have been waived unless there was a writing signed by the party against whom the waiver was asserted). We recognize that under Florida law, there are some situations where a written contract may be modified by subsequent oral agreement between the parties or by the parties' course of dealings. See, for e.g., St. Joe Corp. v. McIver, 875 So.2d 375, 381-82 (Fla.2004); Kiwanis Club of Little Havana, Inc. v. de Kalafe, 723 So.2d 838, 841 (Fla. 3d DCA 1999). However, none of those circumstances are present here.
In addition, the statute of frauds prohibits the oral modification of a contract for the sale of land under the doctrine of promissory estoppel. Shore Holdings, Inc. v. Seagate Beach Quarters, Inc., 842 So.2d 1010, 1012 (Fla. 4th DCA 2003). As such, the contract could not be orally modified because it was required by the statute of frauds to be in writing.
Here, there are no facts that would have permitted the trial judge to invalidate the Bradleys' obligation to apply for financing within five days of December 4, 2002. Accordingly, the trial court was correct in interpreting the plain meaning of the contract and entering summary judgment in favor of Mr. Sanchez.
With regard to the Bradleys' claim that the trial court erred in awarding liquidated damages, the facts here indicate that liquidated damage are appropriate. The Florida Supreme Court has ruled that liquidated damages are appropriate damages in a contract for sale of real estate in Florida, and they are not to be considered a penalty. Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla.1972). Such damages are "not readily ascertainable as of the time the contract is drawn." Id. Consequently, the trial court was correct in concluding that damages from the Bradleys' breach of the real estate contract were not readily ascertainable at the time the parties entered into it. Furthermore, forfeiture of 4.85% of the total sales price (or $510,000) as liquidated damages is not an unconscionable amount of damages. See Lefemine v. Baron, 573 So.2d 326, 328 (Fla.1991) (10% of the contract price found not unconscionable). And finally, the trial court did not err in awarding Mr. Sanchez the "unpaid" deposit of $500,000. The parties agreed that: "[i]f Buyer fails to perform this contract within time specified. . . . Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated damages." Florida case law states that where a buyer defaults, deposits made or agreed to be made by the purchasers may be retained or recovered by the sellers as liquidated damages. Brecker v. Furman, 508 So.2d 514, 515 (Fla. 4th DCA 1987). Consequently, the damages awarded here by the trial court were entirely appropriate.
Finally, with respect to not allowing the Bradleys leave to amend to assert claims for unjust enrichment and conversion, *223 the record facts establish that the damages the Bradleys complain of in their proposed unjust enrichment and conversion claims were legally recognizable liquidated damages to which the parties agreed. There are no set of facts here that would have allowed the Bradleys to prove unjust enrichment or conversion. Accordingly, the trial court was correct in denying as futile the Bradleys' motion to amend.
In sum, the trial court did not err in granting Mr. Sanchez's motion for summary judgment. Thus, we affirm the trial court's order granting summary judgment in favor of Mr. Sanchez. We also affirm the trial court's order granting Mr. Sanchez's motion for final judgment for liquidated damages, as well as the trial court's order denying the Bradleys' motion for leave to amend.
Affirmed.