950 So.2d 537 (2007)
HOT DEVELOPERS, INC., a Florida corporation, Appellant,
v.
WILLOW LAKE ESTATES, INC., a Florida corporation, Appellee.
No. 4D06-2233.
District Court of Appeal of Florida, Fourth District.
March 21, 2007.
Abbey L. Kaplan and Jeffrey M. Berman of Kluger, Peretz, Kaplan & Berlin, P.L., Miami, for appellant.
*538 Suzanne M. McLean of Webber, Hinden, McLean & Arbeiter, P.A., Pembroke Pines, for appellee.
GROSS, J.
Hot Developers, Inc. appeals from a final summary judgment that determined that the seller in a commercial real estate transaction was entitled to keep non-refundable deposits after Hot Developers failed to close. We affirm. The deposit provisions were liquidated damages and forfeiture was not unconscionable at the time of the breach.
Summary judgment is proper "only when there are no genuine issues of material fact conclusively shown from the record and the movant is entitled to judgment as a matter of law. All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available." Shreffler v. Philippon, 873 So.2d 1280, 1281 (Fla. 4th DCA 2004) (quoting Reeves v. N. Broward Hosp. Dist., 821 So.2d 319, 321 (Fla. 4th DCA 2002)) (citation omitted). The standard of review of an order granting summary judgment is de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
We state the facts in the light most favorable to Hot Developers. In May 2005, Hot Developers, as buyer, and Willow Lake Estates, Inc., as seller, entered into an agreement for purchase and sale of commercial real estate for $5,700,000. Both sides were represented by counsel. The agreement contained no provision making the sale conditional upon financing. The closing date was July 8, 2005; the agreement contained a "time is of the essence" provision.
Section 2.1 of the agreement required Hot Developers to deposit $100,000 into its attorney's trust account upon the signing of the contract. There was a due diligence period during which Hot Developers had the option to cancel the agreement for any reason whatsoever and receive a return of its deposit. Section 2.2 of the agreement called for Hot Developers to make a second deposit of $200,000 at the conclusion of the due diligence period. Hot Developers paid both deposits. Afterwards, Hot Developers obtained an appraisal that erroneously undervalued the property at $3,000,000.
The agreement required that closing "take place no later than 45 days after the expiration of the Due Diligence Period, unless otherwise extended pursuant to the provisions of § 2.4." Pursuant to section 2.4, Hot Developers extended the closing date to August 1, 2005. Under section 2.4, as consideration for the closing date extension, Hot Developers directly paid Willow Lake $250,000. Section 2.4 described this money as "an additional non-refundable deposit" which "shall not be held in escrow and shall instead be immediately released to Seller (and credited toward the total purchase price)." Containing a "time is of the essence" provision, section 2.4 provided that Hot Developers would be in default if it failed to close on or before August 1, 2005.
Hot Developers was unable to close on August 1 because of the error in the first appraisal. Although the agreement contained no provision allowing Hot Developers to extend closing beyond August 1, Hot Developers sought a second extension. Hot Developers and Willow Lake negotiated the terms of an addendum to the agreement. The addendum extended the closing date to "Wednesday, August 24, 2005, time being absolutely of the essence." Hot Developers agreed to release the escrowed deposits of $100,000 and $200,000 to Willow Lake pursuant to Section 3.1 of the addendum, which provided:

*539 Buyer directed its attorney to release, and pay by wire transfer to seller on or before 5:00 p.m. on Monday, August 1, 2005, to seller an additional deposit of $300,000, which deposit shall be non-refundable, all other provisions of the Agreement for Purchase and Sale to the contrary notwithstanding.
Hot Developers was again unable to close on August 24 because it had not yet secured a second appraisal.
On August 25, 2005, Willow Lake served Hot Developers with a notice of default. Section 18 of the agreement provided:
If Buyer defaults in the performance of Buyer's obligations under this Agreement for any reason other than Seller's default, Seller at its sole and exclusive option, shall have the right to:
18.1 terminate the Agreement and/or
18.2 retain the Deposit as liquidated and agreed damages and terminate all remaining obligations of the parties under the Agreement.
Willow Lake notified Hot Developers that it was retaining the non-refundable deposits as liquidated damages pursuant to section 18 of the agreement.
Shortly thereafter, Willow Lake secured a contract to sell the property to another party for $5,800,000$100,000 more than the price under the agreement with Hot Developers. However, the second contract did not close. By the time the second contract was terminated, Hot Developers's second appraisal was completed. Hot Developers contacted Willow Lake and expressed its desire to proceed under the agreement or execute a new one. Willow Lake declined and refused to return the $550,000 deposit (i.e. $100,000 initial deposit + $200,000 deposit after due diligence + $250,000 deposit for closing date extension).
In an amended complaint, Hot Developers sought a declaratory judgment pursuant to chapter 86, Florida Statutes. The pleading alleged that (1) the liquidated damages clause in the agreement was unenforceable as a penalty and (2) the liquidated damages clause was unconscionable because the $550,000 deposit lost was grossly disproportionate to any damages that might reasonably have resulted from Hot Developers's default. Hot Developers requested that the court declare the liquidated damages clause to be unenforceable, and enter an order requiring the return of the deposit.
On May 8, 2006, the trial court granted Willow Lake's motion for summary judgment and entered a final judgment. In its order, the court accepted certain facts presented by Hot Developers at the summary judgment hearingthat an expert witness would testify that the property was worth, at a minimum, the same amount as the contract price when Hot Developers failed to close on the closing date.
At oral argument, Willow Lake contended that Hot Developers purchased closing date extensions, so that under Waksman Enterprises, Inc. v. Oregon Properties, Inc., 862 So.2d 35 (Fla. 2d DCA 2003) the deposits were not refundable under the terms of the agreement and the addendum. Waksman observed that it
is entirely reasonable for a seller to exact from the buyer a paymentwhich the buyer cannot recover except as a credit at closingto compensate the seller for keeping the seller's property off the market for a period of time that extends beyond the time for closing initially contemplated and agreed to by the parties.
Id. at 41. However, Waksman also acknowledged that "a deposit forfeiture provision may constitute an unenforceable penalty in certain circumstances," citing to *540 Hyman v. Cohen, 73 So.2d 393, 401 (Fla. 1954), and Lefemine v. Baron, 573 So.2d 326, 329 (Fla.1991). Waksman, 862 So.2d at 42. Waksman recognized that the party challenging the deposit forfeiture in that case had raised only an "argument concerning the proper interpretation" of a contract, and not an argument that the forfeiture was "otherwise unenforceable" under the rule of Hyman v. Cohen. Id.
This case differs from Waksman, because Hot Developers attacks the enforceability of the deposit forfeiture provisions of the agreement and addendum. This court has held that a forfeiture provision in a contract, similar to one calling for a non-refundable deposit in exchange for a closing extension, must be analyzed under the principles of Hyman v. Cohen. Thus, in Hawk's Cay Investors, Ltd. v. Brandy Marine of the Keys, Inc., 524 So.2d 681, 683-84 (Fla. 4th DCA 1988), we applied a Hyman v. Cohen liquidated damages analysis to evaluate a provision in a marina management agreement that allowed the owner to terminate the agreement for a termination fee of $80,000. Hawk's Cay relied upon Dade National Development Corp. v. Southeast Investments of Palm Beach County, Inc., 471 So.2d 113 (Fla. 4th DCA 1985), where this court analyzed provisions in real estate sales contracts that required the seller to pay the buyer $200,000 if the seller cancelled the contract within six months of the execution date.
We agree with Willow Lake that the agreement and addendum provided that the deposits were non-refundable after Hot Developers failed to close. Proper analysis does not stop with an interpretation of the agreement and addendum. The rule of Hyman v. Cohen is "to allow . . . liquidated damage clause[s] [such as the non-refundable deposit provisions] to stand if the damages are not readily ascertainable at the time the contract is drawn," and the amount of liquidated damages is not "grossly disproportionate" to what might be expected to result from the buyer's breach, but "to permit equity to relieve against the forfeiture if it appears unconscionable in light of the circumstances existing at the time of breach." Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla.1972); Hyman, 73 So.2d at 401.
Because the "land sale market in Florida fluctuates from year to year and season to season," Florida recognizes that "it is generally impossible" to say at the time a contract is executed what the seller's loss will be if the buyer fails to close.[1]Hutchison, 259 So.2d at 132. Less than ten percent of the purchase price, the non-refundable deposits in this case were not "so grossly disproportionate to any damages that might reasonably be expected to follow" from the buyer's failure to close, such that the parties could have "intended only to induce full performance . . . rather than to liquidate their damages." Hyman, 73 So.2d at 401.
Arising from a real estate contract, the non-refundable deposit provisions in this case satisfied the rule of Hyman v. Cohen and are properly characterized as enforceable liquidated damages provisions, and not as penalties. Two commercial entities, with no suggestion of an imbalance of bargaining power between them, should be *541 free to fashion a transaction where the seller exacts from the buyer "paymentwhich the buyer cannot recover except as a credit at closingto compensate the seller for keeping the seller's property off the market for a period of time that extends beyond the time for closing initially contemplated" by the parties. Waksman, 862 So.2d at 41. A policy that encourages courts to freely invalidate such provisions would substantially undermine "the commercial value of contractual arrangements." Steinhardt v. Rudolph, 422 So.2d 884, 890 (Fla. 3d DCA 1982) (quoting 14 Samuel Williston, A Treatise on the Law of Contracts § 1632 (3d ed.1972)).
The second aspect of the Hyman v. Cohen rule requires the court to determine whether equity should intervene to relieve a party of a forfeiture that "appears unconscionable in light of the circumstances existing at the time of breach." Hutchison, 259 So.2d at 132. The supreme court has identified two factors that support the finding that a forfeiture is unconscionable: (1) that the buyer's "failure to fulfill the contract was due to any misfortune beyond his control" and (2) that the seller received a benefit, "the retention of which was shocking to the conscience of the court." See Beatty v. Flannery, 49 So.2d 81, 82 (Fla.1950).
This case presents no factors supporting a finding of unconscionability at the time of the breach in August, 2005. Where, as here, the liquidated damages figure was a fair estimate of potential, actual damages when the contract was made; relatively little time passed between contract execution and breach; and no circumstances occurred wholly inconsistent with the parties' expectations, it is not surprising that the liquidated damages figure agreed to at the outset would not be unconscionable at the time of the breach. This was not a case where Willow Lake had already sold the property to another at a minimal loss at a time when it sought to forfeit the $550,000. See Hutchison, 259 So.2d at 132. Although Hot Developers was unable to close because of a faulty appraisal that interfered with its financing, this did not make the forfeiture unconscionable. The commercial real estate sales contract was not contingent on financing; the agreement contained a due diligence period where the buyer had the right to terminate the contract and receive a refund of the deposit; the erroneous appraisal was not a circumstance beyond the buyer's control; and when it realized the mistake in the appraisal, Hot Developers did not try to avoid the agreement, but sought extensions to perform.
Under the case law, a significant factor in the unconscionability equation "is the amount of money being retained vis a vis the total contract price."[2]Hooper v. Breneman, 417 So.2d 315, 317 (Fla. 5th DCA 1982). Here, the $550,000 deposits are only 9.65% of the total contract price. This figure is well within the range of liquidated damages approved by Florida courts. See Beatty, 49 So.2d at 81-82 (holding that forfeiture of 10% of purchase price for buyer's breach of real estate sales contract was not unconscionable); Bruce Builders v. Goodwin, 317 So.2d 868, 870 (Fla. 4th DCA 1975) (approving liquidated damages that were 4.1% of the contract price); Dade Nat'l Dev. Corp., 471 So.2d at 116-17 (upholding forfeiture of cancellation fees totaling 11.82% under two contracts); Bloom v. Chandler, 530 So.2d 341 (Fla. 4th *542 DCA 1988) (upholding a liquidated damages clause wherein the sellers retained a $49,500 deposit as liquidated damages on a contract for $225,000 or 22% of the purchase price); Hooper, 417 So.2d at 318 (upholding liquidated damages provision calling for forfeiture of 13.3% of the purchase price); Johnson v. Wortzel, 517 So.2d 42, 43 (Fla. 3d DCA 1987) (approving forfeiture of 18.2% of contract price); Bradley v. Sanchez, 943 So.2d 218, 222 (Fla. 3d DCA 2006) (finding that "forfeiture of 4.85% of the total sales price (or $510,000) as liquidated damages is not an unconscionable amount of damages"); compare McNorton v. Pan Am. Bank of Orlando, 387 So.2d 393, 397 (Fla. 5th DCA 1980) (holding that "retention of 50% of the purchase price paid as a deposit by a vendee in default" was "sufficiently shocking" to state a cause of action); Berndt v. Bieberstein, 465 So.2d 1264, 1266 (Fla. 2d DCA 1985) (disallowing as unconscionable liquidated damages of over 55% of the purchase price).
That the value of the property may have appreciated between May and August, 2005, does not render the forfeiture of the non-refundable deposits unconscionable. As the trial judge observed, focusing solely on an increase in market value of the property fails to take into consideration those intangible losses that a seller might suffer from taking the property off of the market. A liquidated damages provision permits the parties to agree at the outset of a contract on the amount of damages resulting from nonperformance so as to avoid extensive litigation if and when a breach occurs. The history of fluctuations in the Florida real estate market makes it "generally impossible" to predict changes in value between the date of a contract and the closing months in the future. Hutchison, 259 So.2d at 132. In Bruce Builders, we held that a seller was entitled to liquidated damages even though it had sold the property in question for a net profit of approximately $2,500. 317 So.2d at 870.
On the remaining issue, we find no abuse of discretion in the trial judge's decision not to postpone the summary judgment hearing to allow further discovery.
Affirmed.
WARNER and POLEN, JJ., concur.
NOTES
[1] The supreme court's characterization of the Florida real estate market in Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla.1972), recalls J. Pierpont Morgan's prediction about the stock market. "When asked by a brash young investor for a forecast about how the market would go, Morgan glared down his generously endowed nose, bristled his mustache, and replied: `It will fluctuate, young man. It will fluctuate.'" Time Magazine, Fri. Aug. 19, 1966, located at http://www.time. com/time/magazine /article/0,9171, 836266,00.html.
[2] Because this case involves a short period of time between the execution of the contract and the breach, the evaluation of the deposit/contract price ratio for unconscionability purposes is similar to the "grossly disproportionate" analysis undertaken earlier to determine whether there was a valid liquidated damages clause or a penalty.