EMAS, J.
San Francisco Distribution Center, LLC (“San Francisco Distribution”) appeals final summary judgment entered in favor of Stonemason Partners, LP (“Stonemason”) on its claim for breach of contract. For the reasons that follow, we affirm.
In January 2012, San Francisco Distribution entered into a contract with Stonemason' to buy a commercial property in Miami Beach for $5,250,000.00. The effective date of the contract was January 16, 2012, and San Francisco Distribution was required to close within forty-five days of the effective date. Under the terms of the contract, San Francisco Distribution, was required to pay a total deposit amount of $400,000, to be held in escrow by Wells Fargo. The contract provided that in the event of a default by San Francisco Distribution:
Seller (Stonemason) may either (1) retain all deposit(s) paid or agreed to be paid by Buyer as agreed upon liquidated damages, as consideration for the execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek specific performance. If Seller retains the deposit, Seller will pay the Listing and Cooperating Brokers named in Paragraph • 12 fifty percent of all forfeited deposits retained by Seller (to be split equally among the Brokers) up to the full amount of the brokerage fee.
San Francisco Distribution’s broker was Thomas Martino, who also served as the closing agent. When San Francisco Distribution failed to close, Stonemason demanded the $400,000 deposit amount as liquidated damages per the contract, but was told by Martino that the deposit had been returned to San Francisco Distribution.[1] Accordingly, Stonemason filed suit against San Francisco Distribution and Martino.[2] The complaint alleged several counts against San Francisco Distribution, all of which were dismissed by the court with the exception of a breach of contract count.
In its amended answer to the complaint, San Francisco Distribution admitted that the contract did not close but asserted, in its affirmative defenses, that Stonemason was not entitled to the $400,000 deposit because it had subsequently sold the property to another buyer for $200,000 more than the San Francisco Distribution contract price, and that therefore, Stonema *393 son suffered no damages.[3] In addition, San Francisco Distribution asserted that because the liquidated damages clause of the contract was unreasonable and unrelated to actual damages suffered by Stonemason, it was unconscionable and void and also was an unenforceable penalty clause because it provided the alternative remedy of specific performance.
Stonemason moved for summary judgment against San Francisco Distribution on the breach of contract claim. After a hearing, the trial court granted Stonemason’s motion for summary judgment and entered final judgment against San Francisco Distribution in the amount of $400,000 plus interest, attorney’s fees and costs.[4] This appeal followed, and we review de novo the entry of summary final judgment. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000).
San Francisco Distribution does not dispute that it failed to close the transaction as required by the contract. Neither does it dispute the existence of the liquidated damages clause and its failure to make the required deposit in a total amount of $400,000. Instead, Stonemason argues that summary judgment was improperly granted because the liquidated damages clause:
1. Is unenforceable because the contract provided Stonemason with alternative remedies of liquidated damages or specific performance; and
2. Is unconscionable in light of the fact that Stonemason subsequently sold the property for an amount that exceeded the original purchase price.

Alternative Remedies of Liquidated Damages or Specific Performance Renders Provision Unenforceable

San Francisco Distribution’s first argument — that the liquidated damages clause is unenforceable because it gave Stonemason the option between liquidated damages and specific performance — appears to be based on the Florida Supreme Court case of Lefemine v. Baron, 673 So.2d 326 (Fla.1991). In Lefemine, the Florida Supreme Court held that a liquidated damages clause was unenforceable where the contract gave the seller the option of exercising the liquidated damages provision or suing the defaulting buyer to recover actual damages. To place Lefemine in proper context, we review some of the pre-Lefemine case law in this area.
In Hyman v. Cohen, 73 So.2d 393, 398 (Fla.1954), the Florida Supreme Court discussed the difference between a forfeiture provision (e.g., liquidated damages) and an unenforceable penalty provision. The Court held that where the contracting parties actually intend to liquidate their damages, the provision is valid, but where it is clear the parties’ real intention is to induce performance under the contract, the provision is unenforceable. Id,
The Supreme Court established a test to determine when a liquidated damages provision will be found enforceable, and when it should be found unenforceable as a penalty clause. First, in order to uphold the provision, “the damages consequent upon a breach must not be readily *394 ascertainable.”[5] Lefemine, 573 So.2d at 328. “Second, the sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only-to induce full performance, ’rather than- to liquidate their damages.” Id.
In Pappas v. Deringer, 145 So.2d 770 (Fla. 3d DCA 1962), this court held unenforceable a liquidated damages clause in a lease agreement which gave the landlord the option of retaining the security deposit as liquidated damages upon default by the lessee or suing for a greater amount of damages. We reasoned that this was actually a “penalty clause.” The same principle was applied to a real estate contract in Cortes v. Adgir, 494 So.2d, 523 (Fla. 3d DCA 1986). The Florida Supreme Court in Lefemine agreed with the rationale of both ‘Pappas and Cortes, noting that a contract which gives the seller the option between liquidated damages and suing for actual damages “indicates an intent to penalize the defaulting buyer and negates the intent to liquidate. damages in the event.of a breach.” Lefemine, 573 So.2d at 329. Thus, the Supreme Court held, “[bjecause neither party intends the stipulated sum to be the agreed-upon measure of damages, the provision cannot be a valid liquidated damages clause.” Id. at 330. Significantly for our. purposes, the Lefe-mine court expressly noted that it was not “implyfing] that a liquidated damages clause which merely provided the option of pursuing equitable remedies would be unenforceable.” Id. at n. 5.
San Francisco Distribution argues by analogy that Lefemine should apply to the clause at issue because claims for specific performance ultimately result in a suit for damages. We do not agree with this contention. A -suit, for specific performance seeks equitable relief that requires the breaching party to perform its obligations under the agreement, and is not, as San Francisco Distribution suggests, to be considered the simple equivalent of a claim for damages and therefore governed by Lefemine and Cortes. The argument advanced by San Francisco Distribution has been rejected by our sister court. See Mineo v. Lakeside Village of Davie, LLC, 983 So.2d 20. (Fla. 4th DCA 2008) (distinguishing Lefemine and holding a forfeiture clause enforceable when it gave seller the option of retaining the deposit or-enforcing the contract by specific performance and obtaining damages for delay). We agree with the analysis of Mineo and find that the specific performance option in the contract at bar did not render the liquidated damages provision unenforceable.
Lefemine also requires that “the sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach .... ” Lefemine, 573 So.2d at 328. Generally speaking, “liquidated damages are appropriate damages in a contract for sale of real estate in Florida, and they are not be considered a penalty.” Bradley v. Sanchez, 943 So.2d 218, 222 (Fla. 3d DCA 2006). In this case, the amount of the deposit (i.e., the sum stipulated to be forfeited) was $400,000, which amounts to - 7.6 percent of the purchase price of $5,250,000. Florida courts addressing this issue have held that a forfeiture amount of ten percent or less of the total purchase price is not unconscionable. *395 See Lefemine, 573 So.2d at 328 (ten percent); McGuinness v. Prospect Aragon, LLC, 981 So.2d 496, 499 (Fla. 3d DCA 2008) (eight percent); Bradley, 943 So.2d at 222 (4.85 percent); Hot Developers, Inc. v. Willow Lake Estates, Inc., 950 So.2d 537, 541 (Fla. 4th DCA 2007) (9.65 percent).

Liquidated Damages Clause Unconscionable Because Stonemason Sold the Property for a Higher Pnce and Therefore Suffered No Damages

San Francisco Distribution also contends that the amount of liquidated damages is unconscionable, in light of the fact that Stonemason ultimately sold the property to a subsequent buyer for more than the original contract price, and therefore suffered no damages. We affirm on this issue as well.
San Francisco Distribution’s no-damages argument rests on the premise that a subsequent buyer paid $5.45 million, $200,000 more than the original contract price. While perhaps superficially appealing, such an argument looks solely at the ultimate sales price, ignoring the contractual provision itself and other aspects of potential damages consequent to a buyer’s breach. Such a determination would invite speculation in assessing what 'a 'certain piece of real property might ‘be worth weeks, months or even years after a contract is signed. See Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla.1972)(observing that the “land sale market in Florida fluctuates from year to year and season to season, and it is generally impossible to say at the time a contract for sale is drawn what vendor’s loss (if any) will be .should the contract be breached, by purchaser’s failure to close”); Valenti v. Coral Reef Shopping Center, 316 So.2d 589, 592 (Fla. 3d DCA 1975) (same, citing Hutchison, 259 So.2d at 129).[6] Further speculation would follow regarding the nature and extent of a seller’s loss of other potential buyers during the period of time when the property was taken off the market during the- pen-dency of the original transaction.[7]
In Hot Developers, Inc. v. Willow Lake Estates, Inc., 950 So.2d 537 (Fla. 4th DCA 2007), on nearly identical facts, our sister court affirmed summary judgment on behalf of a seller seeking to keep the deposit under a forfeiture clause even though the seller sold the property to a subsequent buyer for $100,000 more than the defaulting buyer agreed to pay under the contract. In Bradley v. Sanchez, 943 So.2d 218 (Fla. 3d DCA 2006), the buyers contracted to purchase a home from seller for $10,500,000.00. The contract contained a liquidated damages clause in the amount of the total deposit — $510,000. When the buyers defaulted on the contract, seller sought to retain the deposit as liquidated damages. Summary judgment in favor of the seller was upheld and the liquidated damages amount of the deposit was found to be reasonable, despite the buyers’ argument that the seller had since sold the property ■ to another buyer for $10,400,000.00 (an amount which, when combined with the $510,000 deposit; ex *396 ceeded by $410,000 the original purchase price of $10,500,000).[8]
We hold that the liquidated damages clause at issue in this case is not a “penalty clause” but rather, an enforceable liquidated damages clause which gave the seller an option, upon buyer’s breach, between enforcing the contract by specific performance or by forfeiture of the deposit as liquidated damages. We further hold that neither the amount of the deposit, as a percentage of the purchase price, nor the sale to a subsequent buyer in an amount that exceeded the original contract price, rendered the clause unenforceable.
Affirmed.

. It appears that San Francisco Distribution had actually paid only $100,000 of the contractually-required $400,000 deposit.

. The complaint alleged several counts against Martino, but those are not relevant here as Martino is not a party to this appeal. The case against Martino remains pending below.

. The contract with the new buyer was not executed until May 30, 2012, after the lawsuit had already been filed. The sale closed on August 8, 2012 for a purchase price of $5,450,000.00.

. The case against Martino is still pending below.

. The determination to be made is whether damages were readily ascertainable at the time of the contract, not whether damages were readily ascertainable at the time of the breach. See Valenti v. Coral Reef Shopping Ctr., 316 So.2d 589, 592 (Fla. 3d DCA 1975) and discussion infra at 8-9,

. San Francisco Distribution continued' to assert on appeal that the damages were readily ascertainable at the time of the breach, ignoring the fact that, as held in Hutchison and Valenti, the relevant timeframe for this determination is the time of the contract. , See also, Bradley v. Sanchez, 943 So.2d 218 (Fla. 3d DCA 2006).

. San Francisco Distribution’s argument' also overlooks the seller’s carrying costs during this timeframe, and the fact tiiat, under the terms of the contract at issue, 50 percent of the forfeited deposit was to be distributed in equal amounts to the brokers involved in the transaction.

. Talcing San Francisco Distribution's argument to its logical conclusion, in order for Stonemason to "keep” the security deposit without it being characterized as a "windfall,” the subsequent sales price would actually have to be no more than $4,850,000 (i.e., the original sales price of $5,250,000 less the $400,000 deposit "kept” by Stonemason). Presumably, San Francisco Distribution would have made the same argument pressed here, even if the eventual sales price had been $5,150,000, an amount $100,000 less than the original contract price.