# Third District Court of Appeal

## State of Florida

Opinion filed April 4, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D16-1692, 3D17-173
& 3D17-174
Lower Tribunal No. 11-39508

_____

## Haas Automation, Inc.,
Appellant,

vs.

## Dr. Robert Fox, et al.,
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Jacqueline Hogan Scola, Judge.

Kopelowitz Ostrow Ferguson Weiselberg Gilbert, and John J. Shahady and Thomas R. Shahady (Fort Lauderdale); Law Offices of Douglas Paul Solomon, and Douglas P. Solomon (Fort Lauderdale), for appellant.

Isicoff, Ragatz & Koenigsberg, and Eric D. Isicoff and Christopher M. Yannuzzi; Marshall Socarras Grant, P.L., and Ruben E. Socarras (Boca Raton), for appellees.

Before LOGUE, SCALES and LINDSEY, JJ.

SCALES, J.

Appellant, defendant/counter-plaintiff/cross-plaintiff below, Haas Automation, Inc. ("Haas"), appeals three final judgments entered against Haas in this case. In appellate case number 3D16-1692, Haas appeals the final judgment entered in favor of (i) appellees, plaintiffs/counter-defendants below, Dr. Robert Fox, Helene Fox, Dr. Steven Fox and Sherri Fox ("the Foxes"), on the Foxes' claims for breach of a third-party beneficiary contract and for declaratory relief; and (ii) appellee, defendant/cross-defendant below, Fisher Auction Company, Inc. ("Fisher Auction") on Haas's crossclaims for breach of contract, material alteration and deceptive and unfair trade practices. In appellate case number 3D17-173, Haas appeals the final judgment awarding attorney's fees and costs to the Foxes. In appellate case number 3D17-174, Haas appeals the final judgment awarding attorney's fees and costs to Fisher Auction. We consolidated the three appeals, and affirm the final judgment on the merits, and affirm, in part, the attorney's fees judgments.

## I.    *Facts*

### A. *The Relevant Documents*

The Foxes engaged the services of Fisher Auction to sell two oceanfront homes in Golden Beach, Florida at the same auction. The auction brochure advertising the auction, and the property information package describing the subject properties, plainly indicated that the two homes would be sold separately.

2

Pursuant to the auction's eligibility rules, Haas registered to bid on the homes and executed a Bidder Registration Form and a document titled "General Terms and Conditions of Sale." In order to be eligible to bid on both homes, pursuant to the General Terms and Conditions of Sale, Haas deposited $1,000,000 with Newman Guaranty Title Insurance Agency ("Newman Title") (i.e., $500,000 for each property), and noted on the Bidder Registration Form that Haas would be bidding on both properties.[1]

The General Terms and Conditions of Sale contained, *inter alia*, provisions requiring the highest bidder at the auction to execute, as the buyer, a purchase and sale contract, with no edits, revisions, or amendments.[2] The General Terms and Conditions of Sale provided that should the highest bidder fail to comply with this requirement immediately following the auction, the seller (the Foxes) would retain the required deposits as liquidated damages:

8. DEFAULT:

If the Buyer fails to comply with any of these General Terms and Conditions of Sale, the Seller shall retain the required deposit(s), which shall be considered fully earned and non-refundable, under the Agreement as liquated damages and not as a penalty. Upon Default,

---

[1] Prior to the auction, Haas executed a document acknowledging that Haas's board of directors had authorized Albert Wadsworth to participate in the auction and to execute the necessary documents to bind Haas to all written instruments related to the auction of the properties.

[2] A blank copy of the purchase and sale contract was provided to all bidders in the bidder packet.

Buyer agrees to the immediate release of the deposit funds to the Seller without the requirement of further documentation from Buyer.

The purchase and sale contract that the highest bidder was required to execute contained the following prevailing party attorney's fee provision:

6. Special Clauses:

. . . .

M. . . . In any litigation, including breach, enforcement or interpretation arising out of this Contract, the prevailing party in such litigation shall be entitled to recover from the non-prevailing party, reasonable attorney's fees, costs and expenses.

B. *The Auction*

On November 10, 2011, the auction of both homes was held in the living room of one of the homes. Fisher Auction's auctioneer explained at the auction that the homes would be sold using the "High Bidder's Choice" method,[3] whereby the highest bidder in the first round would choose which of the two homes to

[3] The General Terms of Conditions of Sale allowed the auctioneer to set the bidding process:

7. ANNOUNCEMENTS

All announcements from the Auction Block at the Auction will take precedence over all previously printed material and any other oral statements made; provided however that the Auctioneer shall not be authorized to make any representation or warranty (express or implied) with respect to the Property. In the event of a dispute over the bidding process, the Auctioneer shall make the sole and final decision and will have the right either to accept or reject the final bid or re-open the bidding. Bidding increments shall be at the sole discretion of the Auctioneer.

4

purchase at that high bid. If, however, the high bidder in the first round had registered to bid on both homes, as did Haas, the high bidder could purchase **both** homes for two times the high bid amount; and, if the high bidder exercised this option, the auction would be over.

In the auction's first round, Haas, through Mr. Wadsworth, was the high bidder, bidding $6.2 million. At the fall of the gavel, the auctioneer asked if Mr. Wadsworth wanted to exercise the option to take both homes at "two times the bid." Mr. Wadsworth indicated he did wish to exercise the option, which decision was clearly acknowledged by the auctioneer.[4] After exercising the option, the auctioneer announced that the high bidder had taken both homes and, thus, the auction was over. The auctioneer stated:

> He takes them both, folks. It's times two's the money. He takes both properties at $6.2 million. Auction's over folks. Ladies and gentlemen, I want you to understand, that's what's happened. Remember I told you the high bidder could take them, two times the bid. He's indeed done that.

After the auction, Mr. Wadsworth signed a Bid Acknowledgment Form[5] that indicated that the bid price was "6.2M" rather than twice that number.[6] After Mr.

---

[4] The auction was memorialized with an audio and video recording. The trial court admitted the recordings in the lower proceeding over Haas's objections.

[5] A blank copy of the Bid Acknowledgment Form was given to all bidders in the bidder packet.

[6] At trial, the auction clerk testified that "12.4M" was not included on the form because that was not the "bid price."

Wadsworth executed the Bid Acknowledgement Form, Fisher Auction's executive vice president, Francis Santos, who was also in attendance, handwrote "x2" next to the bid price on the form. Mr. Santos then took the Bid Acknowledgment Form to the "contract room," where a Fisher Auction employee filled in blanks on the form, including the ten percent buyer's premium ($620,000) provided for in the General Terms and Conditions of Sale, and the total purchase price ($6,820,000).

While he signed the Bid Acknowledgment Form, Mr. Wadsworth refused both: (i) to execute the two purchase and sale agreements; and (ii) to pay an additional deposit ($364,000) as required by the General Terms of Conditions of Sale. Mr. Wadsworth stated that he believed that he had purchased **both** homes for the $6.2 million bid.[7] The Foxes then ended up selling the two homes to other buyers for well less than $6.2 million each, resulting in a significantly smaller amount of sales proceeds to the Foxes after sales commissions were deducted.[8]

---

[7] The record reflects that, after the auction, Haas's lawyer spoke with representatives of Fisher Auction and explained that, "our guy [Wadsworth] screwed up." Notably, at his deposition, Mr. Wadsworth admitted that he knew, prior to the auction, that the Foxes had separately listed the homes with real estate brokers for $11.5 million and $12.9 million, respectively.

[8] The trial court found that subsequent sales resulted in a net loss of $660,000 to Dr. Steven and Sherri Fox and a net loss of $1,800,000 to Dr. Robert and Helene Fox.

## C. *The Lawsuit*

In November 2011, the Foxes filed the underlying action in the Miami-Dade County Circuit Court. In their Amended Complaint, the Foxes brought: (i) a claim against Haas for breach of a third-party beneficiary contract (i.e., the General Terms and Conditions of Sale) (Count I), seeking to retain, as liquidated damages, the $1,000,000 Haas had deposited with Newman Title[9] in order to bid on the two homes at the auction; and (ii) a claim against Haas and Fisher Auction for declaratory relief (Count II) regarding the Foxes' entitlement to the $1,000,000 deposit.

Haas filed an Amended Counterclaim for breach of contract against the Foxes, alleging that the Bid Acknowledgement Form created a binding contract requiring the Foxes to sell both properties to Haas for $6.2 million. Haas also filed a Second Amended Crossclaim against Fisher Auction alleging: (i) breach of contract (Count I), based on Fisher Auction's purported breach of the Bid Acknowledgment Form; (ii) material alteration (Count II) of the Bid Acknowledgment Form, based on Mr. Santos's adding "x2" next to the bid price; and (iii) deceptive and unfair trade practices (Count III).

---

[9] Newman Title was originally a defendant in this action. The Foxes dropped Newman Title as a defendant after Newman Title wired Haas's $1,000,000 escrow deposit to the Foxes' counsel's trust account.

7

During the course of the proceedings, the Foxes served a request for admissions on Haas. Haas denied those admissions that were directed to the events that took place at the auction, including Mr. Wadsworth's understanding of, and actions at, the auction.

The parties also served proposals for settlement on each other. Specifically, Haas served a separate proposal for settlement on each of the four Foxes, offering to settle all claims and counterclaims in exchange for Haas paying each of the Foxes $28,151 and each of the Foxes executing a general release of their claims to the $1,000,000 deposit then being held by Newman Title. The Foxes, jointly, served a single, un-apportioned proposal for settlement on Haas, offering to settle the Foxes' claims for $799,999.00. According to the Foxes' proposal, the settlement would be paid from the $1,000,000 deposit then being held by Newman Title, with $799,999.00 going to the Foxes and the remaining $200,001.00 going to Haas. Fisher Auction served a proposal for settlement on Haas, offering to settle Haas's crossclaims against it in exchange for paying Haas $1,000. None of the proposals for settlement were accepted.[10]

---

[10] Earlier in the proceedings, the trial court entered final summary judgment in favor of the Foxes and Fisher Auction. We reversed, concluding that genuine issues of material fact regarding ambiguities in the Bid Acknowledgment Form precluded summary judgment. Haas Automation Inc. v. Fox, 156 So. 3d 505 (Fla. 3d DCA 2014) ("Haas I"). In that appellate case, both Haas and the Foxes moved this Court for an award of appellate attorney's fees, with both parties citing to their respective proposals for settlement and with Haas also relying upon the attorney's fees provision contained in the unexecuted real estate sale contracts. Because Haas

*D. The Trial*

The trial court conducted a two-day bench trial in April 2016. In a detailed, thirty-nine page order outlining findings of fact and conclusions of law, the trial court concluded that: (i) the Bid Acknowledgment Form was not a "fully-integrated expression of the parties' agreement" to sell the Foxes' homes to Haas for $6.2 million; (ii) the General Terms and Conditions of Sale, the Bid Acknowledgment Form, and the purchase and sale contract all worked together to establish and memorialize the auction process; (iii) the auctioneer plainly and clearly explained the auction methods; (iv) Haas breached the General Terms and Conditions of Sale by failing to execute the purchase and sale contracts for the two properties; (v) the Foxes were intended third-party beneficiaries of the General Terms and Conditions of Sale; and (vi) the liquidated damages provision of the General Terms and Conditions of Sale did not constitute an unenforceable penalty provision. The trial court also rejected Haas's crossclaim against Fisher Auction for deceptive and unfair trade practices. These findings of fact and conclusions of law were incorporated into a June 7, 2016 final judgment, awarding to the Foxes, as liquidated damages, the $1 million Haas had previously deposited with Newman

---

prevailed in having the summary judgment reversed, this Court granted Haas's motion for appellate attorney's fees, conditioned upon Haas ultimately prevailing in the case on remand. Our order did not specify the grounds for conditionally granting Haas's motion for fees.

Title.  Haas timely appealed this final judgment (appellate case number 3D16-1692).

*E.  Attorney's Fees Awarded to the Foxes*

Shortly thereafter, the parties litigated whether the Foxes and Fisher Auction were entitled to recover their attorney's fees from Haas.  The trial court concluded that the Foxes were entitled to attorney's fees based upon: (i) the prevailing party attorney's fees provision contained in the unexecuted purchase and sale contracts; (ii) Haas's rejection of the Foxes' joint proposal for settlement; and (iii) Haas's denial of certain of the Foxes' requests for admission with respect to the events that took place at the auction, including Mr. Wadsworth's understanding of, and actions at, the auction.  Commendably, the parties thereafter stipulated to the amount of attorney's fees to which the Foxes were entitled to recover under each ground, with Haas reserving the right to appeal the trial court's entitlement determination.  On January 4, 2017, the trial court entered a final attorney's fees judgment for the Foxes in the amount of $207,172.61, including taxable costs, that Haas also has appealed (appellate case number 3D17-173).

*F.  Attorney's Fees Awarded to Fisher Auction*

The trial court concluded that Fisher Auction was also entitled to attorney's fees based upon: (i) the prevailing party attorney's fees provision contained in the unexecuted purchase and sale contracts; and (ii) Haas's rejection of Fisher

10

Auction's proposal for settlement. Once again, the parties thereafter stipulated to the amount of attorney's fees to which the Foxes were entitled to recover under each ground, with Haas reserving the right to appeal the trial court's entitlement determination. On January 4, 2017, the trial court entered a final attorney's fees judgment against Haas in the amount of $53,604.24, including taxable costs, for Fisher Auction, that Haas also has appealed (appellate case number 3D17-174).

## II.    Analysis

### A. The Judgment on the Merits (3D16-1692)

We review a judgment rendered after a bench trial to ensure that the trial court's findings of fact are supported by competent, substantial evidence. Underwater Eng'g Servs., Inc. v. Util. Bd. of City of Key West, 194 So. 3d 437, 444 (Fla. 3d DCA 2016) ("In reviewing a judgment rendered after a bench trial, 'the trial court's findings of fact come to the appellate court with a presumption of correctness and will not be disturbed unless they are clearly erroneous.' Emaminejad v. Ocwen Loan Servicing, LLC, 156 So. 3d 534, 535 (Fla. 3d DCA 2015). Thus, they are reviewed for competent, substantial evidence."). We review the trial court's purely legal conclusions de novo. Id. (noting that a trial court's contractual interpretations rendered after a bench trial are subject to de novo review). The final judgment in this case implicates both standards.

11

The record contains ample competent, substantial evidence supporting the trial court's factual findings that: (i) the auction process was memorialized by several documents – to wit, the General Terms and Conditions of Sale, the purchase and sale contract and the Bid Acknowledgement Form; (ii) Haas, as the high bidder, was bound by the General Terms and Conditions of Sale; (iii) Haas breached the General Terms and Conditions of Sale when it failed to execute the purchase and sale contracts; and (iv) the Foxes were intended third party beneficiaries of the General Terms and Conditions of Sale agreement.[11]

Similarly, the trial court did not err in its legal conclusion that the liquidated damages clause contained in the General Terms and Conditions of Sale is not an unenforceable penalty. See San Francisco Distrib. Ctr., LLC v. Stonemason Partners, LP, 183 So. 3d 391, 394 (Fla. 3d DCA 2014) (concluding that a liquidated damages provision in a real estate sale contract will not be considered a penalty where the "sum stipulated to be forfeited [is] not [] grossly disproportionate to any damages that might reasonably be expected to follow from a breach," noting that "Florida courts addressing this issue have held that a

---

[11] See Networkip, LLC v. Spread Enters., 922 So. 2d 355, 358 (Fla. 3d DCA 2006) ("A third party is considered a beneficiary to the contract only if the contracting parties intend to primarily and directly benefit the third party. . . . [T]he test is whether the parties to the contract intend that a third person be benefited by the contract . . . .").

12

forfeiture amount of ten percent or less of the total purchase price is not unconscionable") (quoting Lefimine v. Baron, 573 So. 2d 326, 328 (Fla. 1991)).

We, therefore, affirm the final judgment on the merits in favor of the Foxes and Fisher Auction.

*B. The Attorney's Fees Judgments (3D17-173) and (3D17-174)[12]*

As noted earlier, the trial court determined that the Foxes were entitled to the recovery of their attorney's fees on three separate bases: (i) the attorney's fees provision of the purchase and sale contracts; (ii) the Foxes' proposal for settlement; and (iii) Haas's denial of requests for admission the Foxes propounded upon it. The trial court also determined that Fisher Auction was entitled to the recovery of its attorney's fees based upon (i) the attorney's fees provision of the purchase and sale contracts, and (ii) Fisher Auction's proposal for settlement. We address each basis of entitlement below.

*1. Contractual Attorney's Fees[13]*

---

[12] Haas does not challenge the trial court's award of taxable costs contained in both attorney's fees judgments.

[13] Appellate courts generally review a trial court's award of attorney's fees for abuse of discretion. See US Acquisition, LLC v. Tabas, Freedman, Soloff, Miller & Brown, P.A., 87 So. 3d 1229, 1234 (Fla. 4th DCA 2012). Where the award of contractual attorney's fees hinges on the interpretation of a contractual provision, however, we review that provision as a pure matter of law, *de novo*. Id; see Point E. Four Condo. Corp. v. Zevuloni & Assocs., Inc., 50 So. 3d 687, 687 (Fla. 4th DCA 2010).

The trial court determined that both the Foxes and Fisher Auction were entitled to recover attorney's fees from Haas based on the prevailing party attorney's fees provision contained in the purchase and sale contracts. We disagree and disallow any fee award on this basis.

Haas never executed the purchase and sale contracts despite the express requirement in the General Terms and Conditions of Sale. Indeed, Haas's failure to execute these purchase and sale agreements formed the basis of Haas's breach. Without Haas having signed them, the purchase and sale contracts were unenforceable; and, though the General Terms and Conditions of Sale may have referenced the purchase and sale contracts, there was nothing in the General Terms and Conditions of Sale incorporating any of the provisions of the purchase and sale contracts into the General Terms and Conditions of Sale. Indeed, paragraph 16 of the General Terms and Conditions of Sale confirms that "this Agreement embodies the entire agreement between the parties relative to the subject matter, and there are no oral or written agreements between the parties, or any oral representations made by either party relative to the subject matter, which are not expressly set forth herein." Had Fisher Auction and the Foxes intended for the prevailing party to recover attorney's fees under the particular circumstances of this case, then a prevailing party attorney's fees provision also should have been set forth in the General Terms and Conditions of Sale – the document that Haas did sign. Kaplan

14

v. Bayer, 782 So. 2d 417, 419 (Fla. 2d DCA 2001) ("It is not clear that the parties intended to provide for an attorney's fee provision in the Agreement for Deed. However, it is clear that they knew how to draft such a provision since one appears in the Purchase Agreement. Absent the clear intention to include such a provision . . . the trial court's award of attorney's fees . . . was improper."). We therefore reverse that portion of both attorney's fees judgments purporting to entitle recovery on the attorney's fees provision found in the purchase and sale contracts. See id. at 418-19 (reversing the trial court's award of attorney's fees pursuant to a prevailing party attorney's fees provision contained in a purchase agreement where (i) the purchase agreement was referenced by, but not expressly incorporated into, the parties' subsequent deed agreement, and (ii) the deed agreement contained a provision providing that "[t]his Agreement . . . contains the entire Agreement of the parties"); Myerson v. Cohen, 348 So. 2d 930, 931 (Fla. 3d DCA 1977) ("In an effort to attach individual liability against Meyerson on the attorneys fees, Cohen argues that the mortgage provision for attorneys fees is incorporated into the purchase and sale agreement which Meyerson signed. We cannot agree. There is no language in the purchase and sale agreement which evinces the slightest intent to incorporate any of the provisions of the mortgage agreement and Cohen cites us to none.").

    2.  *The Proposals for Settlement*[14]

As an alternate basis, the trial court found that the Foxes and Fisher Auction were entitled to recover attorney's fees from Haas based on Haas's rejection of their respective proposals for settlement. We affirm the trial court's entitlement determination as to Fisher Auction, but reverse as to the Foxes.

*a. Fisher Auction's Proposal for Settlement*

Fisher Auction served a proposal for settlement on Haas, offering to settle Haas's crossclaims against Fisher Auction for $1,000. On May 23, 2016, the trial court entered judgment in favor of Fisher Auction on Haas's crossclaims. On June 17, 2016, Fisher Auction filed its motion for attorney's fees, but did not attach a copy of its proposal for settlement to the fees motion. On July 26, 2016, after the trial court bifurcated the issues of fee entitlement and fee amount, Fisher Auction filed a copy of the proposal for settlement.

Without citation to any authority, Haas argues that, under Florida Rule of Civil Procedure 1.442(d) and section 768.79 of the Florida Statues, proposals for settlement must be filed prior to the time a party seeks to enforce an entitlement to attorney's fees. Therefore, according to Haas, Fisher Auction's proposal for

_____

[14] "An appellate court applies the de novo standard of review in determining whether an offer of settlement comports with rule 1.442 and section 768.79 because a 'proposal for settlement is in the nature of a contract.'" Miami-Dade Cty. v. Ferrer, 943 So. 2d 288, 290 (Fla. 3d DCA 2006) (quoting Jamieson v. Kurland, 819 So. 2d 267, 268 (Fla. 2d DCA 2002)).

16

settlement is invalid because Fisher Auction did not attach a copy of its proposal to its motion for attorney's fees. We disagree.

Rule 1.442(d) provides that "[a] proposal shall be served on the party or parties to whom it is made but shall not be filed unless necessary to enforce the provisions of this rule." Section 768.79(3) of the Florida Statutes (2016) provides that "[t]he offer shall be served upon the party to whom it is made, but it shall not be filed unless it is accepted or unless filing is necessary to enforce the provisions of this section." Plainly, neither the rule nor the statute require that the proposal for settlement be filed either before moving for fees or when moving for fees. Both simply require that the movant file the proposal for settlement when "necessary" to enforce provisions of the rule and the statute. Fla. R. Civ. P. 1.442(d); § 768.79(3), Fla. Stat. (2016); see Frosti v. Creel, 979 So. 2d 912, 915 (Fla. 2008) (recognizing that "neither rule 1.442 nor section 768.79 delineates a specific period within which to file a proposal for settlement").

In Frosti, the Florida Supreme Court found it permissible for a party to file a proposal for settlement after a jury verdict, but before entry of a final judgment, noting that neither rule 1.442 nor section 768.79 "unambiguously defines when a proposal for settlement should be filed." Id. at 916. For analogous reasons, we find it permissible for Fisher Auction to have filed its proposal for settlement after the filing of the motion for attorney's fees, but before the hearing on the motion. We

therefore reject Haas's argument that Fisher Auction's proposal for settlement was invalid, and affirm the trial court's fee entitlement judgment on this basis. Pursuant to the parties' commendable stipulation on amount, the attorney's fees award should be reduced to $33,635.50, plus interest.

b. *The Foxes' Proposal for Settlement*

The Foxes, collectively, served on Haas a single, un-apportioned proposal for settlement that stated, in relevant part:

> 1. The Foxes make this proposal for settlement to Haas.
>
> 2. This proposal for settlement is to resolve all claims that were asserted by the Foxes against Haas in this action and all claims that could have been asserted by the Foxes against Haas in this action that arose from the same nucleus of operative facts.
>
> . . . .
>
> 4. The Foxes propose to settle this case in exchange for a payment by Haas to the Foxes in the amount of SEVEN HUNDRED NINETY-NINE THOUSAND NINE HUNDRED NINETY-NINE DOLLARS AND NO CENTS (U.S. $799.999.00), to be paid in the manner set forth in paragraph 5.
>
> 5. The Foxes and Haas will jointly execute a letter . . . directing Newman Guaranty Title Insurance Agency to disburse from its escrow account (i) the sum of $799,999.00 to the Foxes in a check made payable to Isicoff, Ragatz & Koenigsberg and delivered to the Foxes' counsel; and (ii) the sum of $200,001.00 to Haas in a check made payable to Haas Automation, Inc. and delivered to Haas' counsel.

Section 768.79 of the Florida Statutes provides the substantive basis for attorney fee entitlement, and rule 1.442 provides the procedural framework to

18

implement section 768.79's substantive requirements. See Kuhajda v. Borden Dairy Co. of Ala., LLC., 202 So. 3d 391, 395 (Fla. 2016). Section 768.79(2)(b) requires all proposal for settlement offers to "[n]ame *the party* making [the offer] and *the party* to whom [the offer] is being made." § 768.79(2)(b), Fla. Stat. (2016) (emphasis added). In part, rule 1.442(c)(3) implements this requirement by allowing offerors to make a joint offer, so long as the "joint proposal . . . state[s] the amount and terms attributable to each party." Fla. R. Civ. P. 1.442(c)(3). Rule 1.442(c)(3)'s apportionment requirement "must be strictly construed because it, as well as the offer of judgment statute, is in derogation of the common law rule that each party is responsible for its own fees." Pratt v. Weiss, 161 So. 3d 1268, 1271 (Fla. 2015); Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So. 2d 276, 279 (Fla. 2003) (holding that in order for a section 768.79 settlement offer to be valid, "an offer from multiple plaintiffs must apportion the offer among the plaintiffs" as provided by rule 1.442(c)(3)).

The Foxes argue, though, that rule 1.442(c)(4)'s "indirect liability" exception to rule 1.442(c)(3)'s apportionment requirement applies because the two Fox couples were treated as one plaintiff entity throughout the litigation. Rule 1.442(c)(4) excuses the apportionment requirement when the joint offeror "is alleged to be solely vicariously, constructively, derivatively, or technically liable, whether by operation of law or by contract." Fla. R. Civ. P. 1.442(c)(4). In that

19

instance, the offeror is not required to apportion its offer between itself and the other liable party. Id. (providing that "a joint proposal made by . . . such a party need not state the apportionment . . . as to that party"). But, rule 1.442(c)(4)'s exception is applicable only when the alleged liability of the joint offerors is exclusively indirect as a matter of law, i.e., derivative, vicarious, etc. Id.

The Foxes' joint proposal sought to settle both couples' liquidated damages claims occasioned by Haas's failure to execute the purchase and sale contracts for the two auctioned properties. The Foxes do not have any indirect liability for the Foxes' own claims against Haas. The Foxes' reliance upon rule 1.442(c)(4)'s exception to rule 1.442(c)(3)'s apportionment requirement[15] is misplaced, and the trial court therefore erred in awarding the Foxes attorney's fees on this basis.

### 3. The Foxes' Request for Admissions[16]

As an alternate basis, the trial court found that the Foxes were entitled to recover attorney's fees from Haas under Florida Rule of Civil Procedure 1.380(c)

---

[15] Because the Foxes' joint proposal failed to apportion the settlement demand between the two Fox couples, we need not, and therefore do not, address whether it was necessary to apportion the settlement demand between each of the four Fox plaintiffs. See Cobb v. Durando, 111 So. 3d 277, 278 (Fla. 2d DCA 2013) (setting aside an award of attorney's fees pursuant to a proposal for settlement for failure to apportion liability between two offerors – spouses in a breach of contract action against a roofer – as required by rule 1.442(c)(3)).

[16] The standard of review of the grant or denial of a request for attorney's fees under rule 1.380(c) is abuse of discretion. See Maynoldi v. Archbishop Coleman F. Carroll High School, Inc., 62 So. 3d 1149, 1150 (Fla. 3d DCA 2011).

20

based on Haas's denial of certain of the Foxes' requests for admission. We find that the trial court did not abuse its discretion in awarding fees on this ground.

Rule 1.380(c) authorizes the trial court to award expenses, including attorney's fees, against a party that fails to admit the truth of a request for admission made under Florida Rule of Civil Procedure 1.370:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under rule 1.370 and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may file a motion for an order requiring the other party to pay the requesting party the reasonable expenses incurred in making that proof, which may include attorneys' fees. The court shall issue such an order at the time a party requesting the admissions proves the genuineness of the document or the truth of the matter, upon motion by the requesting party, unless it finds that (1) the request was held objectionable pursuant to rule 1.370(a), (2) the admission sought was of no substantial importance, or (3) there was other good reason for the failure to admit.

Here, during discovery, Haas denied several of the Foxes' requests for admission directed at the events that took place at the auction, including Mr. Wadsworth's understanding of, and actions at, the auction. Without specifying which of these denials the trial court was basing its fee entitlement determination on, the trial court awarded the Foxes attorney's fees under rule 1.380(c) at the attorney's fees hearing.

In <u>Arena Parking, Inc. v. Lon Worth Crow Ins. Agency</u>, 768 So. 2d 1107, 1113 (Fla. 3d DCA 2000), this Court recognized an important distinction between

21

requests for admission that would resolve the ultimate issues in the case if admitted, and requests for admission that simply go to establishing a relevant fact in the case.

This Court held that "expenses incurred by a successful litigant as a result of the opposing party's failure to admit requests for admissions may not be assessed against the opposing party for denying a request to admit a hotly-contested, central issue to the case" because "to assess attorneys' fees whenever a party refuses to admit a fact that is the central issue of fact in the case would render prevailing party attorneys' fees the rule, rather than the exception." Id.

Based on Arena Parking, Haas argues that all of the subject requests for admission went to hotly contested issues in the case; hence, the trial court erred in awarding any fees under rule 1.380(c). We disagree. While, as even the Foxes conceded and the trial court found below, certain of the subject requests were most assuredly directed at hotly contested issues, we cannot say that the trial court abused its discretion in awarding attorney's fees based on Haas's denial of at least some of them.[17] We therefore affirm the trial court's determination that the Foxes

---

[17] Ordinarily, this Court would remand for the trial court to determine upon which of the denials its entitlement determination was based, and to make an award only with respect to those denials. See Arena Parking, 768 So. 2d at 1113 ("[W]e reverse and remand on the attorney's fee issue for the trial court to apportion and make an award to Arena Parking for those fees and expenses which were incurred in proving the other matters which the defendants should have admitted as provided under rule 1.380(c).") (footnote omitted). In light of the parties' stipulation on the amount of fees given the trial court's ruling on this issue,

are entitled to recover attorney's fees under rule 1.380(c). Given the parties' commendable stipulation on the amount of fees awardable based on this particular finding, the attorney's fees award should be reduced to $57,500, plus interest.

### III. Conclusion

In appellate case number 3D16-1962, we affirm the trial court's entry of final judgment in favor of the Foxes and Fisher Auction, concluding that the trial court's factual determinations are supported by competent, substantial evidence and that the court committed no legal error.

In appellate case number 3D16-173, we affirm the trial court's determination that the Foxes are entitled to recover attorney's fees from Haas only under rule 1.380(c); we reverse those parts of the attorney's fees judgment awarding attorney's fees pursuant to the purchase and sale contracts and the Foxes' proposal for settlement. Pursuant to the parties' stipulation on amount, we remand with instructions that the attorney's fees award be reduced to $57,500, plus interest.

In appellate case number 3D16-174, we affirm the trial court's determination that Fisher Auction is entitled to recover attorney's fees from Haas only pursuant to Fisher Auction's proposal for settlement; we reverse that part of the attorney's fees judgment awarding attorney's fees pursuant to the purchase and

however, we find this unnecessary.

sale contracts.   Pursuant to the parties' stipulation on amount, we remand with instructions that the attorney's fees award be reduced to $33,635.50, plus interest.

Affirmed in part, reversed in part, remanded with directions.