DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**B.W.B.,** a child**,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2022-1121

[November 15, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Carolyn Bell, Judge; L.T. Case No. 502021CJ001239.

Carey Haughwout, Public Defender, and Logan T. Mohs, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

A juvenile appeals the trial court's finding of guilt and disposition for written threats to kill or do bodily harm in violation of section 836.10, Florida Statutes (2021). He argues the trial court erred in finding him guilty of the crime charged and in finding the statute constitutional. We disagree and affirm.

## I. The Facts

The juvenile posted an image on Snapchat and sent it to a friend. The image showed a person—later identified as the juvenile—in a black cap, wearing large black headphones, a red and black skull mask, black sunglasses, a black hoodie, and a pair of fingerless gloves. In his right hand, he is holding what appears to be a gun. The background is an American flag pinned to a blank wall. The text at the bottom of the photo reads, "Don't go to school tomorrow."

The police subsequently received a tip about a "threat" made by the juvenile "to shoot up [a] school." The police met with the juvenile at his

school.  The juvenile waived *Miranda* and spoke with the police.  He admitted to sending the image but denied adding the text.[1]  The juvenile also told the police, "[the weapon] was an airsoft toy gun."

The police then asked the juvenile about a notebook he carried around.  The juvenile admitted to carrying around a notebook containing (1) his thoughts on racial minorities and Jews, (2) a kill list, and (3) notes on the Columbine school shooting.

The police searched the juvenile's school computer and found evidence he conducted many Google searches "related to school shootings and hate groups," including:

- Columbine,[2]
- Guns,
- Nazi,
- Nikolas Cruz,[3]
- Terrorism,
- Extremist.

The police arrested the juvenile.  At the police station, the juvenile admitted he was the person in the photo but denied adding the caption.

## II. The Trial

At trial, the juvenile's friend testified the juvenile sent him the image.  The friend took the image as a joke; that is why he responded to it with a "crying emoji and a skull emoji."

Regarding the notebook, the friend testified he'd seen the juvenile carrying around a "black spiral notebook in school."  He also testified the juvenile showed him a "white supremacist speech" in the notebook.  The friend testified if he had known the juvenile's notebook contained

---

[1] After the police spoke with the juvenile, they obtained a search warrant for his cellphone and social media accounts.  A subsequent forensic investigation of the cellphone revealed the juvenile sent the image with the "Don't go to school tomorrow" caption.

[2] On April 20, 1999, Eric Harris and Dylan Klebold murdered twelve students and one teacher at Columbine High School in Columbine, Colorado.

[3] On February 14, 2018, Nikolas Cruz shot and killed seventeen people at Marjory Stoneman Douglas High School in Parkland, Florida.

"references to Columbine and [] basically a manifesto on how to carry out a school shooting" when he received the image, he would have taken it seriously.

After the State rested, the juvenile moved for a judgment of dismissal, arguing the State had not met its burden of proof under *Puy v. State*, 294 So. 3d 930, 933 (Fla. 4th DCA 2020), because reasonable people would not take the juvenile's image as a "threat." Defense counsel argued:

> The standard given by *Puy v. State*, . . . the threat itself is measured on whether or not a reasonable person would see the threat itself as true, excuse me, whether the threat itself was sufficient to cause alarm in reasonable persons.

Defense counsel also argued section 836.10 was overbroad and criminalized free speech.

The State responded by arguing "threats" are unprotected speech, and the juvenile sent a "threat" when he sent the image. The State argued the contents of the juvenile's notebook showed he intended the image to be a "threat."

The trial court reserved ruling on the juvenile's motion for a judgment of dismissal.

In closing, defense counsel argued several points: (1) it was obvious the gun was not real, (2) there was no threatening message, and (3) the State could not prove the juvenile transmitted the Snapchat. Defense counsel also argued the statute was unconstitutional on its face.

The State responded it did not have to prove the image was a credible threat, but rather that a reasonable person would believe it to be a threat. The juvenile admitted the notebook was his, and the State established the image was sent from the juvenile's cellphone. Thus, the State had proven, at trial, a reasonable person would be alarmed by the image. Finally, the State argued the statute was constitutional.

The trial court found the image constituted a "threat." Citing to *Puy*, the trial court found that whether "a written communication constitutes a threat under section 836.10 depends on whether the message was 'sufficient to cause alarm in reasonable persons.'"

Regarding the image the juvenile sent, the trial court found "[the juvenile's] face was covered, his identity couldn't be seen from the

3

photograph.  He was wearing a skull mask, . . . sunglasses, headphones, and he had what appeared to be a gun."  On the image "was a caption that said, don't come to school tomorrow."

The trial court found the image was an "expression of intention to inflict evil, injury or damage."  "And [it found the image was] sufficient to cause alarm in reasonable persons."  The trial court found whether the gun was "real" or not was irrelevant because "the overall image combined with the caption . . . was sufficient to cause alarm in reasonable persons."

The trial court further observed:

> I note that [the friend] testified that based upon his knowledge of [the juvenile], that he took the picture and the caption as a joke.  However, even if the standard were whether the recipient of the picture subjectively believed this posting to be any kind of a threat, he was asked when combined with the notebook about the school shootings, whether he would still consider this to be a joke, his testimony was unequivocally no.
>
> So, even if the test is a subjective one, as to the recipient, I find that in this case there is more than sufficient evidence beyond a reasonable doubt of this element, as well.

The trial court then found section 836.10 constitutional in line with other cases.  The trial court found the juvenile guilty, withheld adjudication, and placed the juvenile on probation with general and special conditions.

From the trial court's findings and disposition, the juvenile now appeals.

### III. The Analysis

A. *The State's Burden of Proof*

First, the juvenile argues the trial court committed fundamental error in using the wrong "threat" burden of proof.  He argues our recent decision in *T.R.W. v. State*, 363 So. 3d 1081 (Fla. 4th DCA 2023), which issued after the trial, required the trial court to find the juvenile intended to make a "true threat."  He suggests the trial court's application of a "reasonable persons" standard was error because it lessened the mens rea requirement.

The State responds the trial court correctly followed our binding precedent interpreting section 836.10 in *Puy*. But even if the trial court did err, the legal error was waived when the juvenile invited the trial court to use the *Puy* "threat" definition.

On the merits, the State argues the juvenile sent a "threat" to do harm or conduct a mass shooting when he sent the Snapchat. The State also argues *T.R.W.* was wrongly decided because it conflicts with United States Supreme Court precedent and asks us to en banc this case to reverse *T.R.W.*

We review a trial court's findings of fact in a bench trial for competent, substantial evidence, and a trial court's legal conclusions de novo. *See Cuomo Trading, Inc. v. World Cont. S.R.L.*, 314 So. 3d 309, 310 (Fla. 3d DCA 2020) (citing *Haas Automation, Inc. v. Fox*, 243 So. 3d 1017, 1023 (Fla. 3d DCA 2018)). Because we are asked to review a legal issue, we have de novo review.

The State charged the juvenile under section 836.10—which deals with "threats" to conduct a mass shooting or an act of terrorism. The statute currently provides:

> It is unlawful for any person to send, post, or transmit, or procure the sending, posting, or transmission of, a writing or other record, including **an electronic record, in any manner in which it may be viewed by another person**, when in such writing or record the person **makes a threat** to:
>
> . . . .
>
> (b) Conduct a mass shooting or an act of terrorism.

§ 836.10(2), (2)(b), Fla. Stat. (emphasis added).

Here, the juvenile sent a Snapchat to a friend. The juvenile testified it was a joke, but the investigation revealed the juvenile (1) had conducted numerous searches "related to school shootings and hate groups[]"; and (2) had a notebook containing a white supremacist speech, Columbine references, and "a manifesto on how to carry out a school shooting."

Relying on *Puy*, as requested by the juvenile, the trial court found the defendant guilty. The trial court also found section 836.10 did not require "the actual intent to do harm or the ability to carry out the threat." *See Saidi v. State*, 845 So. 2d 1022, 1027 (Fla. 5th DCA 2003). In doing so,

the trial court commented the evidence supported a finding the defendant intended the Snapchat as a threat, and the recipient would have understood it to be a threat based on the information revealed at trial.

While the "threat" burden of proof has evolved as times and laws have changed, the evidence here supported the trial court's finding of guilt. The trial court, after weighing the notebook and the juvenile's computer searches against the juvenile's claim it was a joke, found the juvenile intended to send a "threat." The record evidence supports the trial court's finding.

At the time the trial court decided this case, defense counsel requested the court to rely on *Puy*. There, we held the question of "whether the posting was a threat under the statute" was a factual question that needed to be resolved by the trier of fact. 294 So. 3d at 934. In reaching that decision, we looked to a recent decision of the Fifth District regarding what constitutes a "threat."[4] *Id.* at 933. But *Puy* was confined to determining whether the trial court, at the motion to dismiss stage, could find a posting was a threat. We held it could not.

Subsequently, in *T.R.W. v. State*, 363 So. 3d 1081 (Fla. 4th DCA 2023), we determined the State's burden was to prove a "threat" under section 836.10 at the adjudication stage. *Id.* at 1084–88. We adopted the U.S. Supreme Court's standard in *Elonis v. United States*, 575 U.S. 723, 734 (2015) (quoting *Morissette v. United States*, 342 U.S. 246, 250 (1952)): the "'mere omission from a criminal enactment of any mention of criminal intent' should not be read 'as dispensing with it.'"

> We [held] that section 836.10 does contain a mens rea component. To prove the commission of a violation of section 836.10, the trier of fact must find that the defendant transmitted a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat.

---

[4] We relied on the Fifth District's decision in *State v. Cowart*, 301 So. 3d 332 (Fla. 5th DCA 2020). There, the Fifth District applied caselaw holding a "threat" exists when a message sent by a defendant is "sufficient to cause alarm in reasonable persons." *Id.* at 334–35.

*T.R.W.*, 363 So. 3d at 1088.  Our decision shifted the focus to the defendant's state of mind instead of the effect on the recipient.[5]

More recently, the United States Supreme Court decided *Counterman v. Colorado*, 600 U.S. 66 (2023).  There, the Court considered both the defendant's mental state **and** the effect on the recipient in determining whether the government had proven its case.[6]  The Court held the government must prove "the defendant had some subjective understanding of the threatening nature of his statements." *Id.* at 69.

"[A] mental state of recklessness is sufficient." *Id.*  "The State need not prove any more demanding form of subjective intent to threaten another." *Id.*  This is the latest statement on the burden of proof concerning threats.

Here, the trial court correctly relied on *Puy*, as it was the most recent discussion of what was required to prove a threat, but its holding was limited to the procedural posture of the case.  The trial court also correctly found the Snapchat was the juvenile's "expression of intention to inflict evil, injury or damage," thereby finding the requisite *mens rea*.  One thing is certain, regardless of the test employed, the evidence in this case was sufficient to satisfy the tests of *Puy, T.R.W.*, and *Counterman*.  We therefore affirm the trial court's finding of guilt.

B. *Section 836.10's Constitutionality*

"The constitutionality of a statute is a pure question of law subject to de novo review." *N.D. v. State*, 315 So. 3d 102, 104 (Fla. 3d DCA 2020) (citing *City of Fort Lauderdale v. Dhar*, 185 So. 3d 1232, 1234 (Fla. 2016)).  "All reasonable doubts about the statute's validity must be resolved in favor of constitutionality." *Id.*

---

[5] In *Elonis*, the Court held a jury was wrongly instructed; the government need prove only a reasonable person would regard a defendant's communications as "threats."  575 U.S. at 740.  "Federal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state." *Id.*

[6] The Colorado statute at issue in *Counterman* used different language than employed in section 836.10.  The Colorado statute made it a crime to "'[r]epeatedly . . . make[] any form of communication with another person' in 'a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress.'"  600 U.S. at 70 (alterations in original) (quoting Colo. Rev. Stat. § 18–3–602(1)(c) (2022)).

The juvenile argues section 836.10 is unconstitutionally overbroad and infringes on the juvenile's First Amendment rights. The State responds the statute is constitutional and is narrowly tailored to prohibit only unprotected speech. We agree with the State.

> **Congress shall make no law** respecting an establishment of religion, or prohibiting the free exercise thereof; or **abridging the freedom of speech**, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Amend. I, U.S. Const. (emphasis added). The First Amendment, however, is not absolute. *N.D.*, 315 So. 3d at 104.

"Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). Accordingly, a criminal statute is overbroad when it restricts both protected and unprotected speech. *Montgomery v. State*, 69 So. 3d 1023, 1028–29 (Fla. 5th DCA 2011). Under the overbreadth doctrine, the government is prohibited "from banning unprotected speech if a substantial amount of protected speech is also prohibited, or chilled, in the process." *Id.* at 1029 (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002)).

"True threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman*, 600 U.S. at 69. Therefore, "a defendant's First Amendment rights are not violated by laws prohibiting such threats." *N.D.*, 315 So. 3d at 104. But "courts must [still] exercise caution in distinguishing true threats from crude hyperbole." *Id.* (quoting *Smith v. State*, 532 So. 2d 50, 53 (Fla. 2d DCA 1988)).

We hold section 836.10 is not overbroad. This is because section 836.10 has a limited objective—to punish "threats" of violence sent through electronic social media. *See N.D.*, 315 So. 3d at 104. Because section 836.10 deals only with "threats" to commit a violent act, it does not violate the juvenile's First Amendment rights.

*Affirmed.*

Warner and Forst, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**